**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| SCRAMOGE TECHNOLOGY LTD., | § | Civil Action No. 6:21-cv-00454-ADA |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| AND SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |
| SCRAMOGE TECHNOLOGY LTD., | § | |
| | § | Civil Action No. 6:21-cv-00579-ADA |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |
| SCRAMOGE TECHNOLOGY LTD., | § | |
| | § | Civil Action No. 6:21-cv-00616-ADA |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANTS' JOINT OPENING CLAIM CONSTRUCTION BRIEF[1]**

---

[1] Defendants file this brief jointly. U.S. Patent Nos. 9,843,215 ("the '215 Patent"); 9,997,962 ("the '962 Patent"); 10,367,370 ("the '370 Patent"); and 10,804,740 ("the '740 Patent") are asserted in *Scramoge Tech. Ltd. v. Google LLC*, No. 6:21-cv-00616-ADA. The '215 Patent, '962 Patent, '370 Patent, and U.S. Patent No. 10,424,941 ("the '941 Patent") are asserted in *Scramoge Tech. Ltd. v. Samsung Elecs. Co., Ltd.*, No. 6:21-cv-00454-ADA. The '740 Patent is not asserted against Samsung. The '215 Patent, '962 Patent, '941 Patent, and '740 Patent are asserted in *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA. The '370 Patent is not asserted against Apple. Google, Apple, and Samsung reserve all rights with respect to the patents not asserted by Scramoge at this time.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................... 1

I.    OVERVIEW OF THE ASSERTED PATENTS ................................................................ 1

      1.    The '215 and '370 Patents ....................................................................... 1

      2.    The '962 Patent ........................................................................................ 3

      3.    The '941 Patent ........................................................................................ 4

      4.    The '740 Patent ........................................................................................ 5

II.    APPLICABLE LEGAL PRINCIPLES ........................................................................... 7

III.    AGREED CONSTRUCTIONS ....................................................................................... 7

IV.    DISPUTED TERMS ....................................................................................................... 7

      1.    "[arranged/provided] on" '215 Patent, Claims 1, 9, 13 and 19 '370 Patent, Claims 1 and 9 ................................................................................. 7

      2.    "a [first/second] surface of the plurality of soft magnetic layers" '215 Patent, Claims 1 and 13 ....................................................................... 10

      3.    "the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layer / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers" '215 Patent, Claims 1 and 13 ...................... 13

      4.    "a [first/second] magnetic sheet" '962 Patent, Claims 1, 7, 9, and 18.................... 16

      5.    "wherein a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate" '962 Patent, Claims 1 and 18 ........................... 18

      6.    "a second polymeric film provided on the plurality of soft magnetic layers" '370 Patent, Claim 1 .................................................................. 21

      7.    "plurality of soft magnetic layers provided on the first adhesive layer" '370 Patent, Claim 1 .................................................................. 23

      8.    "the [first/second] polymer film includes a [first/second] extending portion that extends further than the plurality of soft magnetic layers" '370 Patent, Claim 1 ................................................................. 25

i

9.   "a [first/second] extending adhesive portion that extends further outward than the side portion of the plurality of soft magnetic layers, and a portion of the [first/second] extending adhesive portion is provided in the connected area" '370 Patent, Claims 12 and 15 ............................ 27

10.   "a predetermined intensity" '941 Patent, Claim 1 .................................................... 29

11.   "receiving space" '740 Patent, Claims 6, 7, and 16 .................................................. 30

**CONCLUSION** ........................................................................................................................ **30**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*,
   808 F.3d 1313 (Fed. Cir. 2015) .......................................................................... 8, 11

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002) ...................................................................... 15, 27

*Altair Eng'g, Inc. v. LEDdynamics, Inc.*,
   413 F. App'x 251 (Fed. Cir. 2011) ..................................................................... 8, 11

*Apple Inc. v. Samsung Elec. Co.*,
   695 F.3d 1370 (Fed. Cir. 2012) .............................................................. 12, 21, 24

*AstraZeneca LP v. Apotex, Inc.*,
   633 F.3d 1042 (Fed. Cir. 2010) ............................................................................ 30

*Aug. Tech. Corp. v. Camtek, Ltd.*,
   655 F.3d 1278 (Fed. Cir. 2011) .............................................................. 12, 21, 24

*Beckson Marine, Inc. v. NFM, Inc.*,
   292 F.3d 718 (Fed. Cir. 2002) ............................................................................... 8

*Bilstad v. Wakalopulos*,
   386 F.3d 1116 (Fed. Cir. 2004) .............................................................. 12, 21, 24

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   No. 6-19-CV-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020)....................... 15, 26

*Dyfan, LLC v. Target Corp.*,
   No. W-19-CV-00179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 24, 2020).............. 15, 26, 28

*eCeipt, LLC v. Victoria's Secret Stores, LLC*,
   No. 6:20-CV-747-ADA, 2021 WL 4037599 (W.D. Tex. Sept. 3, 2021) .................................. 7

*Eon Corp. IP Holdings LLC v. Silver Spring Networks*,
   815 F.3d 1314 (Fed. Cir. 2016) ............................................................................ 20

*Howmedica Osteonics Corp. v. Wright Med. Tech.*, Inc.,
   540 F.3d 1337 (Fed. Cir. 2008) .............................................................. 15, 27, 28

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) ...................................................................... 15, 26

*Motionless Keyboard Co. v. Microsoft Corp.*,
   486 F.3d 1376 (Fed. Cir. 2007) ........................................................................... 11

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ........................................................................... 13, 25, 28

*Negotiated Data Solutions, LLC v. Dell, Inc.*,
   596 F. Supp. 2d 949 (E.D. Tex. 2009) .................................................................... 8

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ......................................................................... 7, 30

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 20

*ResQNet.com, Inc. v. Lansa, Inc.*,
   346 F.3d 1374 (Fed. Cir. 2003) ............................................................... 13, 21, 24

*SightSound Techs., LLC v. Apple Inc.*,
   809 F.3d 1307 (Fed. Cir. 2015) ......................................................................... 7, 30

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   983 F.3d 1367 (Fed. Cir. 2021) ........................................................... 10, 12, 21, 24

*UUSI, LLC v. United States*,
   131 Fed. Cl. 244 (2017) ................................................................................. 15, 27

## Statutes

35 U.S.C. § 112 ............................................................................................... 13, 25

35 U.S.C. § 112(b) ......................................................................................... 15, 27

**INTRODUCTION**

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. ("Samsung"), Apple Inc. ("Apple"), and Google LLC ("Google") (collectively "Defendants"), hereby submit this opening claim construction brief, under the parties' Agreed Scheduling Orders, to construe terms of U.S. Patent Nos. 9,843,215 ("the '215 Patent"); 9,997,962 ("the '962 Patent"); 10,367,370 ("the '370 Patent"); 10,424,941 ("the '941 Patent"); and 10,804,740 ("the '740 Patent"). The '215 Patent, '962 Patent, and '370 Patent are asserted against Samsung. The '215 Patent, '962 Patent, '370 Patent, and '740 Patent are asserted against Google. The '215 Patent, '962 Patent, '941 Patent, and '740 Patent are asserted against Apple, but not the '370 Patent (addressed in Sections IV.6-9, *infra*).

## I.   OVERVIEW OF THE ASSERTED PATENTS

### 1.   The '215 and '370 Patents

The '215 Patent issued on December 12, 2017. The '370 Patent issued on July 30, 2019, and is a continuation of the '215 Patent. The '215 and '370 Patents claim and describe a wireless charging and communication board, as exemplified in Figure 2 below.



Both patents target problems with a reduction in transmission efficiency by laterally arranging soft magnetic layers on the same plane so that when charging, the transmission efficiency and the recognition distance to the device being charged can be adjusted. '215 Patent, 7:40-44; '370 Patent, 3:59-65; 7:31-39.

As shown in Figure 2, and as recited in the '215 Patent claims, the wireless charging and communication board comprises in part:

> a plurality of soft magnetic layers comprising a **first soft magnetic layer** and a **second soft magnetic layer**;
> a **first polymeric material layer** arranged on a **first surface of the plurality of soft magnetic layers**;
> a **second polymeric material layer** arranged on a **second surface of the plurality of soft magnetic layers opposed to the first surface**; and
> a **coil pattern** arranged on the **second polymeric material layer** . . . .

'215 Patent, Cl. 1.

Also as shown in Figure 2, the '370 Patent additionally claims an adhesive layer between the polymeric film and the soft magnetic layers:

> a **first polymeric film**;
> a **first adhesive layer** provided on the first polymeric film;
> a **plurality of soft magnetic layers** provided on the first adhesive layer;
> a **second polymeric film** provided on the plurality of soft magnetic layers; and
> a **coil pattern** provided on one surface of one of the **first polymeric film** and the **second polymeric film** and including a wireless charging coil and a near field communication coil . . . .

'370 Patent, Cl. 1.

The '215 Patent further recites that the first and second polymeric material layers include a respective first/second "extending portion extending longer than the plurality of soft magnetic layers." '215 Patent, Cl. 1, 15. The '370 Patent, meanwhile, recites that the first and second polymer films include a respective first and second "extending portion that extends further than the plurality of soft magnetic layers" '370 Patent, Cl. 1. Both patents claim polymeric material

layers disposed on the plurality of soft magnetic layers to align the receiver with the transmitter so that the power is transmitted more efficiently. '215 Patent, 6:24-32; '370 Patent at 6:26-32.

2.    **The '962 Patent**

The '962 Patent issued on June 12, 2018, and is directed to a receiving antenna for a wireless power receiving device. '962 Patent, Abstract. Figure 5, annotated below, illustrates the structure of the claimed wireless charging receiving antenna:



The '962 Patent claims describe the structure of the receiving antenna, which comprises:

**a soft magnetic layer** comprising a **first magnetic sheet** disposed on the substrate and a **second magnetic sheet** disposed on the **first magnetic sheet**;
a **receiving coil** disposed on the **second magnetic sheet**; and
an adhesive layer formed between the second magnetic sheet and the receiving coil, wherein the adhesive layer includes a first adhesive layer in contact with the second magnetic sheet, a second adhesive layer in contact with the receiving coil, and an insulating layer disposed between the first adhesive layer and the second adhesive layer; and
wherein a height of a highest position of the **second magnetic sheet** from the substrate is higher than a height of a lowest position of the **receiving coil** from the substrate.

*E.g.*, '962 Patent, Cl. 1. The first and second magnetic sheets are planar in form, as the receiving coil "may be wound in a direction parallel to a plane of the soft magnetic layer." '962 Patent, 5:35-38.

The '962 Patent purports to decrease the thickness of the receiving antenna by "compressing the plurality of sheets . . . and the receiving coil to form the receiving coil inside of the plurality of sheets." '962 Patent, 2:20-27. This configuration removes an "air layer" between the receiving coil and the soft magnetic layer, thereby "decreasing a distance between a transmission antenna and the receiving antenna." *Id.* at 2:46-52.

### 3.    The '941 Patent

The '941 Patent issued on September 24, 2019, and is directed to a "wireless power transfer system" that includes "[a] wireless power transmitting apparatus for wirelessly transmitting power to a wireless power receiving apparatus." '941 Patent, Abstract. As shown in Figure 7, the '941 Patent describes a "wireless power transmitting apparatus" that includes a power transmitting coil and magnet mounted in a cradle 10 that wirelessly transmits power to a "wireless power receiving apparatus" that includes a power receiving coil and magnet mounted on the terminal 20. *Id.* at Abstract, 8:52-9:21, 9:39-10:21, Fig. 7.



Claim 1 of the '941 Patent further describes the system's claimed features:

A wireless power receiving apparatus for wirelessly receiving power from a
    wireless power transmitting apparatus, the wireless power receiving apparatus
    comprising:
a **receiving coil** for receiving the power; and
a **first magnet** for generating flux density having a ***predetermined intensity*** at one
    side of a face thereof opposite to the wireless power transmitting apparatus,
wherein a **second magnet** provided in the wireless power transmitting apparatus
    and the **first magnet** are disposed such that polarities of the magnets are
    different from each other at opposite faces thereof, and
wherein the **receiving coil** is disposed to surround the first magnet.

'941 Patent, Cl. 1.

Between the magnets in the power transmitting apparatus and power receiving apparatus,

there is a "hall sensor" 16 for "sensing a change width of flux density caused by the wireless

power receiving apparatus." '941 Patent, 3:1-8. The hall sensor assists a controller in the wireless

charging apparatus to "determine whether to transmit the power." *Id.*

### 4. The '740 Patent

The '740 Patent shares a specification with U.S. Patent No. 9,806,565 (the "'565 Patent"),

which is addressed in Apple's independent claim construction brief, *Scramoge Tech. Ltd. v. Apple*

*Inc.*, No. 6:21-cv-00579-ADA, Dkt. 43. Like the '565 Patent, the '740 Patent is directed to a wireless power receiver that is designed to, among other things, "reduce a thickness of the wireless power receiver." '740 Patent, 1:24-25; *see also* 16:10-13 ("the thickness of the electronic device, such as a portable terminal, equipped with the wireless power receiver 1000 can be remarkably reduced"). The '740 Patent purports to achieve its goal of a slimmer profile, in part, through the use of a connecting unit and receiving space. As shown in Figure 11 (an exploded "perspective view"), the basic structure of the claimed wireless receiver consists of a substrate that has a "receiving space," a spiral-shaped conductive pattern on the substrate, and a "connecting unit." Figure 12 shows the embodiment in Figure 11 fully assembled, with the connecting unit in the receiving space and connected to the opposite ends of the conductive pattern.



FIG. 11

FIG. 12

'740 Patent, Figs. 11-12 (annotated). In some embodiments, the wireless receiver also has an antenna coil that surrounds the conductive pattern. *See id.* at Figs. 26 and 27. According to the '740 Patent, "the connecting unit is disposed in the receiving space of the magnetic substrate so that the thickness of the wireless power receiver can be remarkably reduced as much as the thickness of the connecting unit." *Id.* at 2:49-53.

The asserted claims are entirely directed to the structure, rather than any particular functionality, of the wireless receiver.

## II.    APPLICABLE LEGAL PRINCIPLES

The Court is familiar with the legal principles of claim construction. *E.g.*, *eCeipt, LLC v. Victoria's Secret Stores, LLC*, No. 6:20-CV-747-ADA, 2021 WL 4037599, at *1 (W.D. Tex. Sept. 3, 2021). Defendants cite to additional relevant legal authority inline below. Defendants' proposed constructions in Sections IV.1, 2, 4, 6, 7, 10, and 11 represent the plain and ordinary meaning of the terms in the context of the asserted patents.

## III.   AGREED CONSTRUCTIONS

At present, the parties have not agreed on the construction of any terms of any claims of the patents-in-suit.

## IV.   DISPUTED TERMS[2]

1.    **"[arranged/provided] on"**
**'215 Patent, Claims 1, 9, 13 and 19**
**'370 Patent, Claims 1 and 9[3]**

| Samsung, Apple, and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| in contact with | Plain and ordinary meaning |

Defendants' construction for the term "[arranged/provided] on" is rooted in the specification and provides clarity on this term.

---

[2] Sections IV.1, 2, 3, 6, 7, 8, and 9 concern claim terms of the related '215 and '370 Patents.

[3] The '370 Patent is a continuation of the '215 Patent, and the patents share a specification. Therefore, "[arranged/provided] on" should be construed the same for each patent. *See SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'") (quoting *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005)).

First, as described above, the '215 and '370 Patents describe and claim a wireless charging and communication board comprising layers and elements "arranged on" or "provided on" other components. The '215 Patent claims require:

> a first polymeric material layer ***arranged on*** a first surface of the plurality of soft magnetic layers . . .
> a second polymeric material layer ***arranged on*** a second surface of the plurality of soft magnetic layers . . .
> a coil pattern ***arranged on*** the second polymeric material layer . . .
> the second soft magnetic layer [] ***arranged on*** the first soft magnetic layer . . .
> the second soft magnetic layer [] ***provided on*** the first soft magnetic layer.

The '370 Patent claims:

> a first polymeric film;
> a first adhesive layer ***provided on*** the first polymeric film;
> a plurality of soft magnetic layers ***provided on*** the first adhesive layer;
> a second polymeric film ***provided on*** the plurality of soft magnetic layers; and
> a coil pattern ***provided on*** one surface of one of the first polymeric film and the second polymeric film and including a wireless charging coil and a near field communication coil . . . .

The specification does not provide further clarification regarding what it means for one element (*i.e.*, a layer or pattern) to be "arranged on" or "provided on" another element (*i.e.*, a layer or film). The drawings are therefore necessary to shed light on the scope of the claims. *See, e.g.*, *Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*, 808 F.3d 1313, 1317-18, (Fed. Cir. 2015); *Altair Eng'g, Inc. v. LEDdynamics, Inc.*, 413 F. App'x 251, 254 (Fed. Cir. 2011); *Negotiated Data Solutions, LLC v. Dell, Inc.*, 596 F. Supp. 2d 949, 964 (E.D. Tex. 2009) (construing term "coupled" in claim limitation reciting "a microprocessor operating according to a first clock, coupled to said updatable switchable," based on patent figures). And the drawings consistently show contact between the elements. This is not simply a preferred embodiment shown in the figures. *Cf. Beckson Marine, Inc. v. NFM, Inc*., 292 F.3d 718, 724 (Fed. Cir. 2002). Every figure of the '215 and '370 Patents shows that each of these elements that is "arranged" or "provided" on another element

must contact that element either directly or through an adhesive layer. For example, the second polymeric material layer contacts the second surface of the plurality of soft magnetic layers and the coil pattern contacts the second polymeric material layer as exemplified in Figures 3 and 5 shown below:



As shown in Figures 3 and 5 (and the remaining figures) from the '215 and '370 Patents, the second polymeric material layer contacts the second surface of the plurality of soft magnetic layers (directly or through an adhesive layer) and the coil pattern contacts the second polymeric material layer. The dependent claims further support this construction. '215 Patent, Claim 5 ("The wireless charging and communication board of claim 1, further comprising an adhesive layer that adheres the first polymeric material layer and the second polymeric material layer to the plurality of soft

magnetic layers."). Indeed, there are no Figures – none – where contact is missing. Thus, "arranged on" requires contact, either directly or through an adhesive layer that allows for such contact. *See, e.g.*, '215 Patent, 6:54-58.

Defendants' construction provides necessary clarity for the jury to understand the scope of the claims. Thus, Defendants request the Court to adopt their proposed construction of "[arranged/provided] on" as "in contact with."

### 2. "a [first/second] surface of the plurality of soft magnetic layers" '215 Patent, Claims 1 and 13

| Samsung, Apple, and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| a [first/second] surface of more than one of the soft magnetic layers | Plain and ordinary meaning |

The claims and specification support Defendants' construction of this element as referring to the surface of more than one of the soft magnetic layers.

First, the '215 Patent claims and the specification require that the "[first/second] polymeric material layer [be] arranged on a [first/second] surface of the plurality of soft magnetic layers." The plain language of the claims, when read in light of the specification, show that the "[first/second] surface" modifies "the plurality," or more than one, of the soft magnetic layers. Thus, Defendants seek the accepted construction of "plurality" as "more than one." *See, e.g.*, *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1377 (Fed. Cir. 2021). Defendants' proposal is consistent with the specification and established claim construction principles.

The specification of the '215 Patent makes it clear that the surface of the plurality of soft magnetic layers comprises more than one soft magnetic layer. The specification also confirms that

the surface of the plurality of soft magnetic layers must include more than one of the soft magnetic layers.

> As illustrated in FIG. 2, a wireless charging and communication board according to one embodiment of the present application may include: a soft magnetic layer 220, 230; *a polymeric material layer 310 312 arranged on one surface and the other surface of the soft magnetic layer 220, 230* and extending longer than an exposed portion of the soft magnetic layer 220, 230; and a coil pattern 120, 130 arranged on the polymeric material layer 310, 312.

> Also, the polymeric material layer 310, 312 may include a first polymeric material layer 310 and a second polymeric material layer 312; *the soft magnetic layer 220, 230 may include a first soft magnetic layer 220 and a second magnetic layer 230*; and the coil pattern 120, 130 may include a first coil pattern 120 and a second coil pattern 130.

'215 Patent, 4:33-43; *see also id.* at 3:64-4:2; 5:11-16. Indeed, the surface of the plurality of soft magnetic layers consists of the first soft magnetic layer and second magnetic layer to enable both wireless power conversion and near field communication. *Id.* at 4:7-14 ("[B]oth the constitution including the first soft magnetic layer 220 and the first coil pattern (120) and capable of enabling wireless power conversion (WPC) and the constitution including the second soft magnetic layer 230 and the second coil pattern 130 and capable of enabling near field communication (NFC) may be included.").

Second, Figures 1-5 and 9-10 each show more than one of the **soft magnetic layers (220, 230)** and show a **first** and **second polymeric material layer (310, 312)** arranged on a **first surface** and **second surface** of the more than one of the soft magnetic layers as described in the specification. *See Advanced Steel Recovery*, 808 F.3d at 1318 (relying on patent figures to confirm reading of specification); *Altair*, 413 F. App'x at 255; *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1380 (Fed. Cir. 2007) (same); *Toro Co. v. White Consol. Industries, Inc.*, 199 F.3d 1295, 1300–02 (Fed. Cir. 1999) (construing the claim term "including" to mean "part of" and "permanently attached" because, in addition to the patent's drawings, the specification's text

stressed that the claimed vacuum/blower's flow restriction ring was part of and attached to the invention's air inlet cover), *appeal after remand* 266 F.3d 1367, (Fed. Cir. 2001). For example, Figure 2 (provided and annotated below) confirms that the surface of the plurality of soft magnetic layers includes more than one of the soft magnetic layers, namely the **first soft magnetic layer** and **second soft magnetic layer**, as recited in claim 1:[4]



Further, common sense and grammar dictate that the claim language requires that the surface include more than one of the soft magnetic layers. It is black-letter Federal Circuit law that "plurality" means "more than one" or "at least two." *SIMO Holdings*, 983 F.3d at 1377 ("The phrase 'a plurality of' means 'at least two of.'"); *Apple Inc. v. Samsung Elec. Co.*, 695 F.3d 1370, 1378 (Fed. Cir. 2012); *Aug. Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1286 (Fed. Cir. 2011) (construing "plurality of wafers" as "more than one physically distinct wafer"); *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1123 (Fed. Cir. 2004) (affirming construction of "plurality" as "relating to or consisting of or containing more than one, the state of being numerous, and a large

---

[4] Figure 2 is exemplary. The same orientation is shown in other Figures of the '215 Patent.

number or quantity"); *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) (construing "each of a plurality of fields" as "each of at least two fields").

The same principle applies here. In the context of the '215 Patent, "plurality" means "more than one." That interpretation is consistent with the plain meaning of the claims and nothing in the specification limits the open-ended nature of the claim. Defendants' construction simply applies the appropriate meaning of "plurality" consistent with the specification and established Federal Circuit precedent.

Thus, Defendants request the Court to adopt their proposed construction of "a [first/second] surface of the plurality of the soft magnetic layers" as "a [first/second] surface of more than one of the soft magnetic layers."

3.   **"the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layer / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers" '215 Patent, Claims 1 and 13**

| Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

Claims 1 and 13, when read in light of the specification and file history,[5] do not inform a person of ordinary skill in the art ("POSITA") of the full scope of what it means for an extending portion to extend longer than the plurality of soft magnetic layers, and are therefore indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (A patent is invalid for indefiniteness under 35 U.S.C. § 112 if "its claims, read in light of the specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the

---

[5] The file history does not substantively discuss this claim element.

invention."). The claims do not specify (1) how the extending portion "extends longer," *i.e.*, whether the extending portion begins at an edge of a soft magnetic layer and projects outward (in an unknown direction) or has a longer length than the total length of the plurality of soft magnetic layers; or (2) a direction for the extending portion (*i.e.*, vertical, horizontal, etc.). Plaintiff's proposed construction is untenable because the term has no plain and ordinary meaning.

The term "extending longer" is ambiguous and the specification fails to clarify its meaning. According to the plain claim language, "extending **longer**" requires that the length of the ***extending portion*** be **longer** than the length of the plurality of soft magnetic layers. However, the specification shows the opposite. For example, in Figure 2, the plurality of soft magnetic layers are longer than any extending portion. Moreover, the figures show only one portion of a cross section, and there is a portion of a polymeric layer relative to an edge of a single soft magnetic layer (not a plurality, which the claims require) that continues to the left of the figure.



14

The only use of the "extending longer" term in the specification refers to the "***polymeric material layer*** 310 312 . . . extending longer than an exposed portion of the soft magnetic layer 220, 230." '215 Patent, 4:27-30. This does not help clarify the meaning of "extending longer" as used in the claims ("***extending portion*** extending longer than the plurality of soft magnetic layers").

While one might assume the patent drafter intended to indicate that the polymeric layer, and not the extending portion, is longer than the soft magnetic layers, to do so would be to rewrite the claims. *Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *8 (W.D. Tex. Jan. 23, 2020) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.") (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004)). It is not the job of those in the art to guess the intention of the patent drafter, nor is it the Court's job to correct a drafter's mistake. *Dyfan, LLC v. Target Corp.*, No. W-19-CV-00179-ADA, 2020 WL 8617821, at *4 (W.D. Tex. Nov. 24, 2020) ("[I]nventor's subjective intent is irrelevant to the issue of claim construction.") (quoting *Howmedica Osteonics Corp. v. Wright Med. Tech.*, Inc., 540 F.3d 1337, 1347 (Fed. Cir. 2008)); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) ("It is not our function to rewrite claims to preserve their validity.); *UUSI, LLC v. United States*, 131 Fed. Cl. 244, 264 (2017) ("If correcting a[n] . . . error in a claim term would be substantively significant and require[ ] guesswork as to what was intended by the patentee in order to make sense of the patent claim, the court will not correct the . . . error.") (internal quotations omitted).

Moreover, the claim language does not provide any direction or orientation of the extending portion. The specification and file history provide no assistance. A POSITA would have

no context for the positioning of the extending portion relative to the plurality of soft magnetic layers. The extending portion could project in any direction, and there is no identification of the orientations in which the claimed invention would function as intended. Thus, one of ordinary skill in the art would not be on notice of the bounds of the claim. 35 U.S.C. § 112(b) ("the claims must particularly point out and distinctly define the metes and bounds of the subject matter to be protected by the patent grant.").

Due to the ambiguity in the claim language, a POSITA could not, with reasonable certainty, ascertain the relative lengths or positions of the soft magnetic layer and the extending portion. Thus, Defendants request the Court hold that "the [first/second] polymeric material layer [includes/comprises] a [first/second] extending portion extending longer than the plurality of soft magnetic layers" is indefinite, and consequently claims 1 and 13, and any claims depending therefrom, are indefinite.

### 4.    "a [first/second] magnetic sheet"
   '962 Patent, Claims 1, 7, 9, and 18

| Samsung, Apple and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| a [first/second] continuous planar magnetic material | Plain and ordinary meaning |

The parties disagree whether the meaning of a "sheet" in the context of the invention is continuous and planar. But the '962 Patent's specification, when viewed in light of a POSITA's knowledge, requires that the magnetic sheets are formed of both continuous and planar magnetic material, consistent with Defendants' proposed construction.

First, the intrinsic evidence demonstrates that the magnetic sheets are planar. For example, the specification explains that the receiving coil is "wound in parallel with a plane of the soft magnetic layer" or "disposed . . . on an upper plane of a plurality of sheets." '962 Patent,

2:2-24, 3:20-24; *see also id.* at 6:36-37 ("The receiving coil may be wound in a direction parallel to a plane of the soft magnetic layer 210 on the soft magnetic layer 210."). The specification also discloses that an insulating layer is formed on "an upper plane of the plurality of sheets." *Id.* at 2:23-24.

Figure 6, which illustrates the first and second magnetic sheets 516 and 512, also shows that each magnetic sheet has a continuous, planar form:



Second, dictionaries at the time of the '962 Patent further confirm that a POSITA would have understood a magnetic sheet is "continuous" without breaks or gaps between adjacent surfaces. For example, one dictionary defines the term "sheet" as "[a] broad, flat, continuous surface or expanse." Ex. A, GOOG-SCRA-CC-000001 at 000004 (Houghton Mifflin Harcourt, *Webster's New College Dictionary* 1041 (3d ed. 2008)). Consistent with this understanding, Defendants' construction proposes that magnetic sheets are "continuous."

Thus, Defendants request the Court to adopt their proposed construction of "a [first/second] magnetic sheet" as "a [first/second] continuous planar magnetic material."

5.      **"wherein a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate"'962 Patent, Claims 1 and 18**

| Samsung, Apple and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| wherein the highest point of the second magnetic sheet from the substrate in between adjacent receiving coil portions is higher than the lowest point of the receiving coil from the substrate at the adjacent receiving coil portions | Plain and ordinary meaning |

The parties disagree whether the receiving antenna's second magnetic sheet must be higher than the receiving coil when measured in between adjacent receiving coil portions, or whether only some portion of the second magnetic sheet, measured at some distant edge, must be higher than the receiving coil.

The specification never uses the words of the claim ("a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate"). But the specification does clarify that this limitation means that the second magnetic sheet between adjacent coil portions must be higher than the lowest point of those adjacent receiving coil portions.

Figure 5 illustrates the claimed invention with its soft magnetic layer 500 comprised of two magnetic sheets and receiving coil 520:



As Figure 5 demonstrates, the second magnetic sheet is not higher than the receiving coil at only a specific point in the structure (such as at the left-most edge). Rather, there is consistency; the portion of the second magnetic sheet in between adjacent receiving coil portions also is higher than the lowest point of those receiving coil portions.

The specification consistently describes the claimed arrangement this way. The purpose of the '962 Patent's purported invention is to "decreas[e] a thickness of the receiving antenna" by "decreasing a distance between a transmission antenna and the receiving antenna." '962 Patent, 2:49-52. To achieve this result, the receiving antenna is fabricated by "stacking a plurality of sheets including a soft magnetic metal powder, . . . disposing a receiving coil on the insulating layer, and compressing the receiving coil to form the receiving coil inside of the plurality of sheets." *Id.* at 2:20-26. Elsewhere, the specification explains that the receiving coil is "wound in parallel with a plane of the soft magnetic layer and formed inside of the soft magnetic layer." *Id.* at 2:2-4; *see also id.* at 2:28-38 ("a receiving coil wound in parallel with a plane of the soft magnetic layer, and formed inside of the soft magnetic layer"), 6:18-19 ("Here, the receiving coil may be formed inside of the soft magnetic layer").

In view of the specification's teachings that the antenna is "compressed," formed "inside" of the magnetic sheet, and Figure 5's illustration showing the magnetic sheet extending between adjacent receiving coil portions, a POSITA would have understood that when measured between adjacent receiving coil portions, the second magnetic sheet is higher than the lowest point of those adjacent receiving coil portions.

Scramoge's opposition to this construction suggests that Scramoge intends to argue that the limitation is met even if only *some* portion of the magnetic sheet is higher than *any* portion of the receiving coil, no matter how distant that portion of the magnetic sheet is from the receiving coil. Such an interpretation cannot be reconciled with the intrinsic evidence discussed above. The '962 Patent's claims "do not stand alone," but rather "are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005). There is no description in the specification, including in any figure, supporting that the second magnetic sheet must only be higher than the receiving coil only at a distant edge from the receiving coil. Accordingly, Defendants' construction, which accurately reflects the specification's description of the invention and its purpose, is necessary to clarify the scope of the claims and assist the trier of fact in resolving the parties' disputes. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) (plain and ordinary meaning "may be inadequate . . . when reliance on the term's ordinary meaning does not resolve the parties' dispute.").

Thus, Defendants request the Court to adopt their construction of "wherein a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate" as "wherein the highest point of the second

magnetic sheet from the substrate in between adjacent receiving coil portions is higher than the lowest point of the receiving coil from the substrate at the adjacent receiving coil portions."

6.    **"a second polymeric film provided on the plurality of soft magnetic layers"**
      **'370 Patent, Claim 1**

| Samsung and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| "a second polymeric film in contact with more than one of the soft magnetic layers" | Plain and ordinary meaning |

The claims and specification support Defendants' construction of this element and as referring to the second polymeric film being in contact with more than one of the soft magnetic layers.[6]  Scramoge's opposition to this construction suggests that Scramoge intends to argue that the limitation is met if the film is only in contact with one of the plurality soft magnetic layers. Such an interpretation cannot be reconciled with the intrinsic evidence, and thus necessitates Defendants' construction.

As discussed in § IV.1, *supra*, the term, "provided on," should be construed to mean "in contact with." And as discussed in § IV.2, *supra*, the accepted construction of "plurality" is "more than one."[7]  Defendants' construction simply applies those plainly correct interpretations.

Defendants' construction is also supported by the specification, which describe each of the magnetic layers contacting the polymeric film either directly or through an adhesive layer.

---

[6] The file history does not substantively discuss this claim element.

[7] It is black-letter Federal Circuit law that "plurality" means "more than one" or "at least two." *See SIMO*, 983 F.3d at 1377 ("The phrase 'a plurality of' means 'at least two of.'"); *Apple*, 695 F.3d at 1378 (Fed. Cir. 2012); *Aug. Tech.*, 655 F.3d at 1286 (Fed. Cir. 2011) (construing "plurality of wafers" as "more than one physically distinct wafer"); *Bilstad*, 386 F.3d at 1123 (Fed. Cir. 2004) (affirming construction of "plurality" as "relating to or consisting of or containing more than one, the state of being numerous, and a large number or quantity"); *ResQNet.com*, 346 F.3d at 1383 (Fed. Cir. 2003) (construing "each of a plurality of fields" as "each of at least two fields"). The same principle applies here.

> The polymeric material layer 310, 312 of FIG. 8 may be disposed on one surface and the other surface of the first and second soft magnetic layers 220, 230. The polymeric material layer 310, 312 may be disposed to be adhered to the first and second magnetic layer 220, 230 via the adhesive layer 315.

*Id.* at 6:39-44; *see also id.* at 3:66-4:4; 4:25-32; 5:11-16. The specification describes how this lateral arrangement facilitates the board's operation to communicate and provide power conversion: "[B]oth the constitution including the **first soft magnetic layer** 220 and the first coil pattern (120) and **capable of enabling wireless power conversion** (WPC) and the constitution including the **second soft magnetic layer** 230 and the second coil pattern 130 and **capable of enabling near field communication** (NFC) may be included." '370 Patent at 4:10-16.

Moreover, every figure of a cross section view shows this arrangement. For example, Figure 2 shows the second polymeric material layer contacting each of the plurality of laterally-arranged soft magnetic layers through an adhesive layer:



Figure 5 shows the same arrangement, but without an adhesive layer.



FIG. 5

Accordingly, Defendants request the Court to adopt their proposed construction of "a second polymeric film provided on the plurality of soft magnetic layers."

### 7. "plurality of soft magnetic layers provided on the first adhesive layer" '370 Patent, Claim 1

| Samsung and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| "more than one soft magnetic layer in contact with the first adhesive layer" | Plain and ordinary meaning |

The claims and specification require that the plurality of soft magnetic layers is "provided on the first adhesive layer."[8] As discussed above in Section IV.7, the claim language emphasizes that the plurality of soft magnetic layers are disposed laterally because they are provided on the first adhesive layer. As with the construction above in Section IV.7, Defendants' construction here applies the constructions of "provided on" meaning "in contact with," and "plurality" to mean

---

[8] The file history does not substantively discuss this claim element.

"more than one."[9] The specification further consistently specifies that the adhesive layer is in contact with each of the more than one magnetic layers.

> The wireless charging and communication board may further include an adhesive layer intended for adhering the first polymeric material layer and the second polymeric material layer to the plurality of the soft magnetic layers.

*Id.* at 8:32-35; *see also id.* at 3:54-56; 6:41-44; 6:54-58. The specification describes how this arrangement facilitates the board's operation to communicate and provide power conversion. '370 Patent at 4:10-16.

Similarly, every figure of a cross section view that includes an adhesive layer provided on a magnetic layer shows this precise arrangement. For example, Fig. 2 shows the first and second soft magnetic layers laterally arranged with each soft magnetic layer contacting the first adhesive layer:



---

[9] It is black-letter Federal Circuit law that "plurality" means "more than one" or "at least two." *See SIMO*, 983 F.3d at 1377 ("The phrase 'a plurality of' means 'at least two of.'"); *Apple*, 695 F.3d at 1378 (Fed. Cir. 2012); *Aug. Tech.*, 655 F.3d at 1286 (Fed. Cir. 2011) (construing "plurality of wafers" as "more than one physically distinct wafer"); *Bilstad*, 386 F.3d at 1123 (Fed. Cir. 2004) (affirming construction of "plurality" as "relating to or consisting of or containing more than one, the state of being numerous, and a large number or quantity"); *ResQNet.com*, 346 F.3d at 1383 (Fed. Cir. 2003) (construing "each of a plurality of fields" as "each of at least two fields"). The same principle applies here.

Accordingly, Defendants request the Court to adopt Defendants' proposed construction of "a second polymeric film provided on the plurality of soft magnetic layers."

**8.      "the [first/second] polymer film includes a [first/second] extending portion that extends further than the plurality of soft magnetic layers" '370 Patent, Claim 1**

| Google's Proposed Construction | Scramoge's Proposed Construction |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

Claim 1, when read in light of the specification and file history,[10] does not inform a POSITA of the full scope of what it means for an extending portion to extend further than the plurality of soft magnetic layers, and is therefore indefinite. *Nautilus,* 134 S. Ct. at 2124 (A patent is invalid for indefiniteness under 35 U.S.C. § 112 if "its claims, read in light of the specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). The claims do not specify (1) how the extending portion "extends further," *i.e.*, whether the extending portion begins at an edge of a soft magnetic layer and projects outward (in an unknown direction) or has a longer length than the total length of the plurality of soft magnetic layers; or (2) a direction for the extending portion (*i.e.*, vertical, horizontal, etc.). Plaintiff's proposed construction is untenable because the term has no plain and ordinary meaning.

The term "extends further" is ambiguous and the specification fails to clarify its meaning. According to the plain claim language, "extends further" requires that the length of the extending portion be longer than the length of the plurality of soft magnetic layers. However, the specification shows the opposite. For example, in Figure 2, the plurality of soft magnetic layers are longer than any extending portion. Moreover, the figures show only one portion of a cross section, and there

---

[10] The file history does not substantively discuss this claim element.

is an extending portion of a polymeric layer relative to an edge of a single soft magnetic layer (not a plurality which the claims require) that continues to the left of the figure.



The term "extends *further*" is nowhere used in the specification. The specification only discloses a "polymeric material layer 310 312 . . . extending *longer*." '370 Patent, 4:29-31. This does not help clarify the meaning of "extends *further*" as used in the claims, particularly because the specification refers to the ***polymeric material layer*** extending ***longer*** while the claims refer to the ***extending portion*** extending ***further***.

While it may be convenient to assume the patent drafter intended to indicate that the polymeric layer, and not the extending portion, extends longer, and not further, than the soft magnetic layer, to do so would be to rewrite the claims. *Digital Retail*, 2020 WL 376664, at *8 ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.") (quoting *Innova/Pure*, 381 F.3d at 1119). It is not the job of those in the art to guess the intention of the patent drafter, nor is it the Court's job to correct a drafter's mistake. *Dyfan*, 2020 WL 8617821, at *4 ("[I]nventor's subjective intent is irrelevant to the issue of claim construction.") (quoting

*Howmedica*, 540 F.3d at 1347); *Allen*, 299 F.3d at 1349 ("It is not our function to rewrite claims to preserve their validity.); *UUSI*, 131 Fed. Cl. at 264 ("If correcting a[n] . . . error in a claim term would be substantively significant and require[ ] guesswork as to what was intended by the patentee in order to make sense of the patent claim, the court will not correct the . . . error.") (internal quotations omitted).

Moreover, the claim language does not provide any direction or orientation of the extending portion. The specification and file history provide no assistance, as discussed above. Accordingly, one of ordinary skill in the art would have no context for the positioning of the extending portion relative to the plurality of soft magnetic layers, and thus would not be on notice of the bounds of the claim. 35 U.S.C. § 112(b) ("the claims must particularly point out and distinctly define the metes and bounds of the subject matter to be protected by the patent grant.").

Due to the ambiguity in the claim language, a POSITA could not, with reasonable certainty, ascertain the relative lengths or positions of the soft magnetic layer and the extending portion. Thus, Defendants request the Court to adopt Defendants' proposed determination that "the [first/second] polymer film includes a [first/second] extending portion that extends further than the plurality of soft magnetic layers" is indefinite, and consequently claim 1, as well as all claims that depend from it, is indefinite.

**9.     "a [first/second] extending adhesive portion that extends further outward than the side portion of the plurality of soft magnetic layers, and a portion of the [first/second] extending adhesive portion is provided in the connected area"**
**'370 Patent, Claims 12 and 15**

| Google's Proposed Construction | Scramoge's Proposed Construction |
|:---:|:---:|
| Indefinite | Plain and ordinary meaning |

This element is indefinite because it fails to provide objective boundaries around the scope of the invention. Plaintiff's proposed construction is untenable because the term has no plain and ordinary meaning.

"Extending adhesive portion" is ambiguous. It has no ordinary meaning, is not a term known in the art, and is not used, much less defined, in the specification. The plain claim language fails to clarify the meaning of "extending adhesive portion." The "extending adhesive portion" is described as "extend[ing] further outward." As discussed in § IV.8., *supra*, the term "extends further" is vague and is not defined, or even used, in the specification. The term "outward" similarly does provide any additional clarity that might "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124 (2014). "Outward" does not indicate a direction, and there is no indication as to where "outward" projects from. One of ordinary skill in the art would be unable to determine the orientation of the extending adhesive portion. Moreover, those skilled in the art are left to guess the difference between "extend further than," as used in claim 1, and "extend further *outward* than." *Dyfan*, 2020 WL 8617821, at *4 ("[I]nventor's subjective intent is irrelevant to the issue of claim construction.") (quoting *Howmedica*, 540 F.3d at 1347). Neither the claims nor the specification provides any clarity concerning how "outward" alters the already unclear term.

A POSITA could not, with reasonable certainty, ascertain the meaning of the ambiguous claim terms. Thus, Defendants request the Court to hold that "a [first/second] extending adhesive portion that extends further outward than the side portion of the plurality of soft magnetic layers, and a portion of the [first/second] extending adhesive portion is provided in the connected area" is indefinite, and consequently claims 12 and 15 are indefinite.

10.  **"a predetermined intensity"**
     **'941 Patent, Claim 1**

| Samsung and Apple's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| a magnetic intensity that, when detected by the transmitter, causes the transmitter to transmit power | Plain and ordinary meaning |

Defendants' proposed construction provides necessary clarity on the meaning of "a predetermined intensity" and accurately conveys how a POSITA would understand the term at the time of the '941 Patent.  The '941 Patent explains that its wireless power transfer system includes a "hall sensor" for sensing a magnetic field of the system's magnets. '941 Patent, 3:1-6. The system then compares that magnetic field to "a predetermined critical value to determine whether to transmit power." *Id.* at 6-8. For example, the specification explains:

> [T]he cradle 10 senses flux density of the first magnet 12 and flux density of the second magnet 30 sensed when the terminal 20 is placed on the cradle 10 based on flux density of the first magnet 12 sensed when there is no terminal 20. In a case in which a change width a of the flux density is equal to or greater than a critical value, it may be determined that the terminal 20 is placed on the cradle 10 for charging and the terminal 20 may be charged.

*Id.* at 10:36-44. So that the system knows when to initiate charging, the first magnet is formed of "material causing the change width a of the flux density which is equal to or greater than the critical value." *Id.* at 10:52-54; *see also id.* at 11:37-12:49.

Consistent with the specification's description, Defendants' construction provides that the "intensity" of the system's first magnet is "predetermined" to the transmitter such that it causes the transmitting device to transmit power. The specification compels that understanding: "[E]mbodiments provide a method of arranging polarities of a transmitter magnet and a receiver magnet to more effectively sense a magnetic field of the receiver magnet required to start wireless power transfer." '941 Patent, 2:62-65.

29

Accordingly, Defendants request that the Court construe "a predetermined intensity" as "a magnetic intensity that, when detected by the transmitter, causes the transmitter to transmit power."

**11.    "receiving space"**
**'740 Patent, Claims 6, 7, and 16**

| Apple and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| empty space for the connecting unit extending from one surface of the substrate to an opposing surface of the substrate | Plain and ordinary meaning |

Because the '740 Patent is a direct descendant of the '565 Patent, and they therefore share a specification, claim terms must be construed consistently between them. *See SightSound Techs.*, 809 F.3d at 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'") (quoting *NTP, Inc.,* 418 F.3d at 1293 (Fed. Cir. 2005). Apple and Google therefore incorporate by reference, as though wholly set forth herein, the arguments set forth in Apple's claim construction brief regarding the '565 Patent. As laid out in that brief, because the '740 Patent, like the '565 Patent, consistently makes clear that the receiving space 1) is for the connecting unit, and 2) is an empty space that extends from one surface of the substrate to the opposing substrate, the patentee has "defined that term by implication." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1052 (Fed. Cir. 2010). Accordingly, Apple and Google's construction should be adopted.

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court adopt Defendants' proposed constructions for each of the disputed claim terms.

DATED:  January 7, 2022

Respectfully submitted,

Steven D. Moore (admitted in W.D. Tex.)
Rishi Gupta (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: smoore@kilpatricktownsend.com
Email:  rgupta@kilpatricktownsend.com

Alton L. Absher III (admitted in W.D. Tex.)
Andrew W. Rinehart (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
Email:  aabsher@kilpatricktownsend.com
Email:  arinehart@kilpatricktownsend.com

Mansi H. Shah (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-2445
Facsimile: (650) 618-8641
Email:  mansi.shah@kilpatricktownsend.com

Amanda N. Brouillette (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 685-6775
Facsimile: (404) 541-3335
Email:  abrouillette@kilpatricktownsend.com

Kasey E. Koballa (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1712
Facsimile: (202) 315-3024
Email:  kkoballa@kilpatricktownsend.com

*/s/ Alton L. Absher III*
J. Stephen Ravel
Texas State Bar No. 16584975
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, TX 78701
Telephone: (512) 495-6429
Email: steve.ravel@kellyhart.com

*Attorneys for Apple Inc.*

Christopher P. Schaffer (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
12255 El Camino Real, Suite 250
San Diego, CA 92130
Telephone: (858) 350-6161
Facsimile: (858) 408-3428
Email:  cschaffer@kilpatricktownsend.com

DATED:  January 7, 2022

Respectfully submitted,

By:    /s/ John C.  Kappos

Timothy S. Durst (Tex. Bar. No. 786924)
tdurst@omm.com
O'MELVENY & MYERS LLP
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Melissa Richard Smith (Tex. Bar No.
24001351)
GILLAM AND SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (admitted *Pro Hac Vice*)
nwhilt@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

John C. Kappos (admitted *Pro Hac Vice*)
jkappos@omm.com
Cameron W. Westin (admitted *Pro Hac Vice*)
cwestin@omm.com
Bo Moon (admitted *Pro Hac Vice*)
bmoon@omm.com
Meng Xu (admitted *Pro Hac Vice*)
mxu@omm.com
Andrew S. Bledsoe (admitted *Pro Hac Vice*)
abledsoe@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

*Counsel for Samsung Electronics, Co., Ltd. and
Samsung Electronics America, Inc.*

DATED:  January 7, 2022                    Respectfully submitted,


By:    _/s/ Shamita Etienne-Cummings_
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
201 E. Howard Street
Henderson, TX 75654
Telephone:  (903) 657-8540
Facsimile:  (903) 657-6003

Bijal V. Vakil (CA Bar No. 192878)
(_admitted to the Western District of Texas_)
ALLEN & OVERY LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 388-1650
Email: googlescramoge@allenovery.com

Shamita Etienne-Cummings (CA Bar No. 202090)
(_admitted to the Western District of Texas_)
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3800
Email: googlescramoge@allenovery.com

_Counsel For Google LLC_

34

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 7, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Shamita Etienne-Cummings*
Shamita Etienne-Cummings
