# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| SCRAMOGE TECHNOLOGY LTD., | |
| Plaintiff, | Case No. 6:21-cv-00454-ADA |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |
| SCRAMOGE TECHNOLOGY LTD., | |
| Plaintiff, | Case No. 6:21-cv-00579-ADA |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., | |
| Defendant. | |
| SCRAMOGE TECHNOLOGY LTD., | |
| Plaintiff, | Civil Action No. 6:21-cv-00616-ADA |
| v. | **JURY TRIAL DEMANDED** |
| GOOGLE LLC, | |
| Defendant. | |

## PLAINTIFF SCRAMOGE TECHNOLOGY LTD.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     DISPUTED TERMS ............................................................................................ 1

      1.   "[arranged/provided] on" '215 Patent, Claims 1, 9, 13 and 19
           '370 Patent, Claims 1 and 9............................................................ 1

      2.   "a [first/second] surface of the plurality of soft magnetic layers"
           '215 Patent, Claims 1 and 13 ......................................................... 5

      3.   "the [first/second] polymeric material layer includes a [first/second]
           extending portion extending longer than the plurality of soft magnetic
           layers / the [first/second] polymeric material layer comprises a
           [first/second] extending portion extending longer than the plurality of
           soft magnetic layers"
           '215 Patent, Claims 1 and 13 ....................................................... 10

      4.   "a [first/second] magnetic sheet"
           '962 Patent, Claims 1, 7, 9, and 18............................................... 15

      5.   "wherein a height of a highest position of the second magnetic sheet
           from the substrate is higher than a height of a lowest position of the
           receiving coil from the substrate"
           '962 Patent, Claims 1 and 18 ....................................................... 18

      6.   "a second polymeric film provided on the plurality of soft magnetic
           layers"
           '370 Patent, Claim 1 ................................................................... 22

      7.   "plurality of soft magnetic layers provided on the first adhesive layer"
           '370 Patent, Claim 1 ................................................................... 23

      8.   "the [first/second] polymer film includes a [first/second] extending
           portion that extends further than the plurality of soft magnetic layers"
           '370 Patent, Claim 1 ................................................................... 24

      9.   "a [first/second] extending adhesive portion that extends further
           outward than the side portion of the plurality of soft magnetic layers,
           and a portion of the first extending adhesive portion is provided in the
           connected area"
           '370 Patent, Claims 12 and 15....................................................... 24

     10.  "a predetermined intensity"
           '941 Patent, Claim 1 ................................................................... 25

     11.  "receiving space"
           '740 Patent, Claims 1-3, 6, 7, and 8 (Google), Claims 6, 7, and 16
           (Apple)....................................................................................... 25

III.    CONCLUSION................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*BASF Corp. v. Johnson Matthey Inc.*,
   875 F.3d 1360 (Fed. Cir. 2017) .................................................................................. 15

*Cf. Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
   512 F.3d 1338 (Fed. Cir. 2008) .................................................................................... 8

*Cryptopeak Sols., LLC v. Lowe's Home Centers, LLC*,
   2016 WL 7198705 (E.D. Tex. Sept. 9, 2016) ............................................................ 12

*CyWee Grp., Ltd. v. Huawei Device Co.*,
   No. 2:17-cv-00495-WCB-RSP, 2018 WL 6419484 (E.D. Tex. Dec. 6, 2018) ............. 15

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   No. 6-19-CV-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ...................... 2

*Epos Techs. Ltd. v. Pegasus Techs.*,
   766 F.3d 1338 (Fed. Cir. 2014) .................................................................................... 5

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Corp.*,
   830 F. App'x 305 (Fed. Cir. 2020) ............................................................................. 22

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014) ........................................................................ 2, 3, 20

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) .................................................................................... 3

*Kyocera Wireless Corp. v. ITC*,
   545 F.3d 1340 (Fed. Cir. 2008) .................................................................................. 12

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017) .................................................................................. 13

*Nautilus, Inc. v. Biosig Instruments*,
   572 U.S. 898 (2014) .................................................................................................... 13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .............................................................................. 3, 20

*SightSound Techs., LLC v. Apple Inc.*,
   809 F.3d 1307 (Fed. Cir. 2015) ..................................................................... 24, 25, 26

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
   844 F.3d 1370 (Fed. Cir. 2017) .................................................................................. 11

*Thorner v. Sony Comput. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ........................................................................... 2, 3, 20

*Twist, Inc. v. B GSE Grp., LLC*,
  No. 3:19-cv-00583-MOC-DSC, 2021 WL 2210892 (W.D.N.C. June 1, 2021) ............................ 12

*Whirlpool Corp. v. Ozcan*,
  No. 2:15-CV-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ........................................ 12

## I.  INTRODUCTION

Plaintiff Scramoge Technology Ltd. ("Scramoge") submits this responsive claim construction brief in response to Defendants' Joint Opening Claim Construction Brief ("Br.").

## II.  DISPUTED TERMS

1.  **"[arranged/provided] on"**
    **'215 Patent, Claims 1, 9, 13 and 19**
    **'370 Patent, Claims 1 and 9**

| Scramoge's Proposed Construction | Samsung, Apple, and Google's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | in contact with |

Defendants improperly seek to import a limitation from exemplary Figures into the terms "[arranged/provided] on."  Yet, Defendants' construction is directly contradicted by Samsung and Google's IPR where they repeatedly argue that:

> **Whether insulation film 32 is arranged directly or indirectly "on" the first surface of soft magnetic member 31 is irrelevant as the '215 Patent uses the term "on" broadly**. For example, the '215 Patent describes embodiments where polymeric layers (310/312) are **"arranged on"** soft magnetic layers (220/230) despite the presence of intervening adhesive layers 315.

Ex. 1 (Samsung '215 IPR) at 17 n. 7[1]; *see also id*. at 21 n. 9 ("**Whether the coil pattern is arranged directly or indirectly 'on' the second polymeric material layer is irrelevant as the '215 Patent uses the term 'on' broadly**."); 68 n. 14 (same); 82 n. 17 (same).  That is, Defendants acknowledge that the '215 Patent contemplates that there may be intervening layers or components between a layer or component that is "[arranged/provided] on" another layer or component.  For this reason, the Court should reject Defendants' improper construction at the outset.

Claim terms "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "There are only two

---

[1] All emphasis added unless stated otherwise.

exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (citation omitted).   Defendants admit that the "specification does not provide further clarification regarding what it means for one element (i.e., a layer or pattern) to be 'arranged on' or 'provided on' another element (i.e., a layer or film)."  Br. at 8.  As such, there is no definition or disavowal that would justify limiting the ordinary meaning of the terms to Defendants' unduly narrow construction.   The terms "[arranged/provided] on" are also words the jury will readily understand in the context of the patents based on their plain and ordinary meaning.   And the ordinary meaning of the terms does not require Defendants' unduly narrow construction of "in contact with."  *See* Ex. 2, Merriam-Webster (defining "arrange" as "to put into a proper order or into a correct or suitable sequence, relationship, or adjustment"); Ex. 3, The Free Dictionary (defining "arrange" as "to put into a specific order or relation; dispose").   Accordingly, the plain and ordinary meaning controls.

Moreover, the intrinsic evidence confirms that Defendants' construction is improper.  First, the claims themselves specify when layers or portions "are connected" or "contact" each other. *See* '215 Patent, Claim 1 ("wherein the first extending portion and the second extending portion **are connected** to each other"); '215 Patent, Claim 11 ("wherein the first extending portion and the second extending portion **contact** each other") (emphasis added).  The patentees' choice of the different terms "arranged" and "contact" in the claims confirms that they are not intended to have the same meaning.  *See, e.g.*, *Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *8 (W.D. Tex. Jan. 23, 2020) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.") (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004)).  Second, the specification uses the term "directly formed on" when it intends to describe a more limiting arrangement between the layers.  *See, e.g.*, '215 Patent at 5:51-55 ("According to the

embodiment of FIGS. 4 and 5, the polymeric material layer 310, 312 may be **directly formed on** the soft magnetic layer 220, 230 without forming an adhesive layer 315 for adhering the polymeric material layer 310, 312 to the soft magnetic layer 220, 230."). Thus, the claims and specification confirm that the terms "[arranged/provided] on" do not require Defendants' narrow construction.

Defendants' construction of "in contact with" is improper for several additional reasons. First, Defendants commit the "cardinal sin" of importing limitations from the exemplary Figures into the claims. *See, e.g.*, *Hill-Rom*, 755 F.3d at 1371 ("[W]e do not read limitations from the embodiments in the specification into the claims."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (describing "reading a limitation from the written description into the claims" as "one of the cardinal sins of patent law") (internal quotation marks omitted). Specifically, Defendants' construction is premised on the fact that certain Figures supposedly "show contact between the elements." Br. at 8. But the Federal Circuit has explained: "[i]t is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words." *Thorner*, 669 F.3d at 1366.

Further, Defendants' construction is ambiguous and does not properly account for the use of an adhesive layer as disclosed in the specification and Figures. Notably, Defendants admit that Figure 3 and dependent claim 5 allow for an adhesive layer (315) such that the polymeric material layer (312) is not in direct contact with the soft magnetic layers, as seen in Defendants' annotated Figure 3 below.



Br. at 9.   To that end, Defendants concede that "'arranged on' requires contact, either directly **or through an adhesive layer** that allows for such contact."  Br. at 10.  But their construction of "in contact with" fails to include any reference to indirect contact through an adhesive layer and would only serve to confuse the jury.

Finally, by attempting to import limitations from the Figures, Defendants' construction fails to account for the possibility of minor modifications to the Figures that are contemplated by the specification.  In particular, the specification explains that:

> [I]t should be apparent that **modifications and variations can be made by persons skilled without deviating from the spirit or scope of the invention**. Therefore, it is to be understood that the foregoing is illustrative of the present application and **is not to be construed as limited to the specific embodiments disclosed, and that modifications to the disclosed embodiments, as well as other embodiments, are intended to be included within the scope of the appended claims** and their equivalents.

> \*       \*       \*

> Although embodiments have been described with reference to a number of illustrative embodiments thereof, it should be understood that numerous other modifications and embodiments can be devised by those skilled in the art that will fall within the spirit and scope of the principles of this disclosure. More particularly, **various variations and modifications are possible in the component parts and/or arrangements of the subject combination arrangement within the scope of the disclosure, the drawings and the appended claims**. In addition to variations and modifications in the component parts and/or arrangements, alternative uses will also be apparent to those skilled in the art.

'215 Patent at 9:20-52; *see also id*. at 2:26-30 ("The embodiments in the specification and the constructions shown in **the drawings are provided as a preferred embodiment** of the present application, **and it should be understood that there may be various equivalents and modifications** which could substitute at the time of filing.").  For example, Defendants' unduly limiting construction does not account for other incidental layers that may exist, such as part of the manufacturing and application of the adhesive layer.  Nothing in the specification or prosecution history warrants

excluding such embodiments from the scope of the claims.   Therefore, Defendants' construction is contrary to the intrinsic evidence and should be rejected.

   2.  **"a [first/second] surface of the plurality of soft magnetic layers"**
       **'215 Patent, Claims 1 and 13**

| Scramoge's Proposed Construction | Samsung, Apple, and Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a [first/second] surface of more than one of the soft magnetic layers |

   The specification, claims, and prosecution history all confirm that Defendants' construction is improper.   Specifically, the patent teaches two different embodiments for the "plurality of soft magnetic layers," and Defendants improperly seek to exclude one of those embodiments from the scope of the claims.  *See Epos Techs. Ltd. v. Pegasus Techs.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014) (a "claim construction that excludes a preferred embodiment…is rarely, if ever correct and would require highly persuasive evidentiary support.") (citation omitted).

   Defendants focus on the embodiment illustrated in Figure 2, where a first soft magnetic layer (220 highlighted green) is adjacent to a second soft magnetic layer (230 highlighted blue) on the same horizontal plane, as shown in Defendants' annotated Figure 2:



Br. at 12.  Based on this embodiment, Defendants argue that the first surface highlighted in red must include the surface of *both* the first soft magnetic layer and the second soft magnetic layer.  *Id*. However, Defendants seek to exclude from the scope of the claims a second embodiment illustrated is Figures 9 and 10 where a plurality of magnetic layers (220 highlighted green) are stacked vertically:



'215 Patent, Figs. 9 and 10.  In the context of this embodiment, the specification explains that "[a]ccording to the embodiment of the invention of FIGS. 9 and 10, **the soft magnetic layer 220, 230 may be added in plural numbers** so that transmission efficiency upon charging can be adjusted or

improved, a recognition distance upon data communication can be adjusted." *Id*. at 6:59-63.
Importantly, the claim language includes *both* of these embodiments. *See, e.g.*, '215 Patent, Claim 1
("a plurality of soft magnetic layers comprising a first soft magnetic layer and a second soft magnetic
layer"). In this second embodiment, the polymeric material layer is only adjacent to the surface of one
of the plurality of soft magnetic layers. Defendants cannot identify anything in the intrinsic evidence
suggesting that the patentee intended to omit this second embodiment from the scope of the claims.

Moreover, Defendants' citation of cases involving the term "plurality" are irrelevant because
they do not address the issue here concerning whether the polymeric material layers must be arranged
on both the first soft magnetic layer and the second soft magnetic layer. The claims here do not recite
that the polymeric material layer must be arranged on "*both* the first soft magnetic layer and the second
soft magnetic layer"—instead, the Defendants generically refer to the antecedent "the plurality of soft
magnetic layers." *Cf. Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir.
2008) ("The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim
term does not change the general plural rule, but simply reinvokes that non-singular meaning.").

In addition, the dependent claims confirm that the second embodiment is included in the scope
of the independent claims of the '215 Patent. Specifically, claims 9 and 19 recite the second
embodiment where the soft magnetic layers are arranged on each other:

> 9. The wireless charging and communication board of claim 1, wherein the second
> soft magnetic layer is arranged on the first soft magnetic layer.

> 19. The portable terminal of claim 13, wherein the second soft magnetic layer is
> provided on the first soft magnetic layer.

Further, dependent claim 6 confirms that Defendants' construction is improper:

> 6. The wireless charging and communication board of claim 1, wherein an air gap
> is further formed **between the plurality of soft magnetic layers**, the first extending
> portion, and the second extending portion.

7

That is, under Defendants' construction of "plurality of soft magnetic layers," claim 6 would not include any of the Figures illustrated in the patent because the air gap (seen in red) is not adjacent to *both* the first soft magnetic layer 220 and the second soft magnetic layer 230, as seen in Defendants' annotated Figure 5 below.



Br. at 23. In Figure 5 above, the air gaps (highlighted in red) are between the first soft magnetic layer 220 and the first and second extending portions 313, but the air gaps are not adjacent to the second soft magnetic layer 230. This is also true for the air gaps illustrated in Figures 3 and 10. Thus, dependent claim 6 confirms that Defendants' construction cannot be correct because it confirms that the use of "plurality of soft magnetic layers" does not require being adjacent to the surfaces of both the first and second soft magnetic layers.[2]

The prosecution history further confirms that Defendants' construction is improper. During prosecution of the '215 Patent, the patentee amended the independent claim to recite "a plurality of soft magnetic layers." Ex. 4, App. No. 14/636,347 (Nov. 21, 2016 Amendments) at 7. As part of the

---

[2] Dependent claim 5 of the '370 Patent presents the same issue further confirming Defendants' construction is incorrect. *See* '370 Patent, Claim 5 ("wherein an air gap is formed between the side portion of the plurality of soft magnetic layers and the connected area.").

amendment, the patentee also amended the dependent claims that previously required "a first soft magnetic layer and a second soft magnetic layer **arranged at a periphery portion of the first soft magnetic layer on the same plane** on which the first soft magnetic layer is arranged":

> 7.    (Currently Amended) The wireless charging and communication board of claim 1, wherein the ~~plurality of~~ soft magnetic [[layer]] layers comprises[[:]] a first soft magnetic layer[[;]] and a second soft magnetic layer arranged ~~at a periphery portion of~~ on the first soft magnetic layer ~~on the same plane on which the first soft magnetic layer is arranged~~.

*Id*. at 9.  In other words, while dependent claim 7 above was initially directed to the first embodiment that is the focus of Defendants' construction, the claim was amended to instead cover the second embodiment that Defendants improperly seek to exclude.  *See also* Ex. 5, App. No. 16/11,895 (Oct. 2, 2018 and Dec. 20, 2018 Amendments) ('370 Patent prosecution history showing similar amendments to the independent and dependent claims).

Finally, Defendants' construction is contradicted by Apple's IPR for the '215 patent where Apple applied the plain and ordinary meaning of the term to alleged prior art where the first or second surface is only adjacent to one of the plurality of soft magnetic layers (the vertically stacked red portions, labeled "first magnetic plate" and "second magnetic plate"):



**Ex.1005, Fig. 3 (annotated); Ex.1003, ¶ 67.**

Ex. 6 (Apple '215 IPR) at 34.  Apple's IPR never suggested that any construction beyond plain and ordinary meaning was required for this term or that the first surface must be adjacent to the surfaces of both magnetic plates.

For these reasons, Defendants' construction is refuted by the intrinsic evidence and should be rejected.

**3.  "the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layers / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers"**
**'215 Patent, Claims 1 and 13**

| Scramoge's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Google cannot satisfy its burden to prove indefiniteness by clear and convincing evidence.  *See Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence.").  Notably, only Google—but not Apple or Samsung— alleges this term is indefinite.

As a threshold matter, Google does not submit any evidence from a person of ordinary skill in the art ("POSITA") to support its attorney argument.  Moreover, Google fails to even identify the level

of skill for a POSITA. Thus, Google's criticisms are purely conjecture and attorney argument.  This is insufficient to prove indefiniteness by clear and convincing evidence.  *See, e.g.*, *Twist, Inc. v. B GSE Grp., LLC*, No. 3:19-cv-00583-MOC-DSC, 2021 WL 2210892, at *8-9 (W.D.N.C. June 1, 2021) ("Without evidence from a POSITA, the Court cannot conclude this claim is indefinite."); *Whirlpool Corp. v. Ozcan*, No. 2:15-CV-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) ("Instead of submitting evidence, such as an expert declaration, to demonstrate the understanding of a person of ordinary skill in the art, Yunda relies entirely on attorney argument…. The Court finds such argument unpersuasive.").

When considering the indefiniteness of a particular claim, it is necessary to consider the disputed term in the context of the overall claim, as a whole, and not in a vacuum.  *See Cryptopeak Sols., LLC v. Lowe's Home Centers, LLC*, 2016 WL 7198705, at *5 (E.D. Tex. Sept. 9, 2016) ("'[T]his court does not interpret claim terms in a vacuum, devoid of the context of the claim as a whole.' The relevant inquiry is whether the claim as a whole provides reasonable certainty to one of ordinary skill in the art about the subject matter it covers.") (quoting *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1347 (Fed. Cir. 2008)).  Here, the entire context of the claim provides reasonable certainty to one of ordinary skill in the art about the scope of the claimed invention.  For example, the disputed terms are bolded below in claim 1:

> 1. A wireless charging and communication board, comprising:
>
> a plurality of soft magnetic layers comprising a first soft magnetic layer and a second soft magnetic layer;
>
> a first polymeric material layer arranged on a first surface of the plurality of soft magnetic layers;
>
> a second polymeric material layer arranged on a second surface of the plurality of soft magnetic layers opposed to the first surface; and
>
> a coil pattern arranged on the second polymeric material layer,
>
> wherein the plurality of soft magnetic layers are positioned between the first polymeric material layer and the second polymeric material layer,

> wherein **the first polymeric material layer includes a first extending portion extending longer than the plurality of soft magnetic layers**,
>
> wherein **the second polymeric material layer includes a second extending portion extending longer than the plurality of soft magnetic layers**,
>
> <u>wherein the first extending portion and the second extending portion are connected to each other,</u>
>
> wherein at least one of the first soft magnetic layer or the second soft magnetic layer is made with one or more of an amorphous alloy, a crystalline alloy, an amorphous alloy ribbon, a nanocrystalline ribbon, or a silicon steel plate.

The underlined portion of the claim requires that "first extending portion and the second extending portion are connected to each other."  The claim also recites the arrangement of the polymeric material layers with respect to the soft magnetic layers.  As such, the other portions of Claim 1 provide context for these terms.

Moreover, a claim is not indefinite so long as, viewed in light of the specification and prosecution history, it informs a POSITA about the scope of the invention with "reasonable certainty." *Nautilus, Inc. v. Biosig Instruments*, 572 U.S. 898, 910 (2014).  Here, the specification provides more than sufficient guidance to a POSITA.  For example, Figures 1-5, 9, and 10 all illustrate various embodiments of "extending portion[s] extending longer than the plurality of soft magnetic layers." *See, e.g.*, *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1293 (Fed. Cir. 2017) ("A skilled artisan viewing Figures 11 and 19 would readily understand …. the meaning of 'near' with reasonable certainty.").  In light of the specification, there is no basis to believe a POSITA would have any problem understanding the scope of the claims.

Google's unsupported attorney arguments are meritless.  First, Google argues that the plain claim language "requires that the length of the extending portion be longer than the length of the plurality of soft magnetic layers." Br. at 14.  But Google's argument is directly contradicted by the Figures.  In light of the Figures, there is no ambiguity in the meaning of the claim language. For

example, Google's annotated Figure 2 identifies the "extending portion" (highlighted red) consistent

with the claim language:



Br. at 14.  Moreover, the specification provides a detailed explanation of the extending portion length

"l" shown in the Figure above and its importance:

> Also, **an extending portion length l of a first polymeric material layer 310 or a second polymeric material layer 312** and a thickness h of the magnetic soft material layer 220, 230 may be formed to have a relation of the following Equation 1.
>
> l=A×h      [Equation 1]
>
> At this time, **l represents an extending portion length of the first polymeric material layer 310 or the second polymeric material layer 312**, h represents a thickness of the soft magnetic layer 220, 230, and A represents a constant of 0.6 to 10. When the value of A is less than 0.6, the polymeric material layer 310, 312 may not sufficiently surround the soft magnetic layer 220, 230, so that moisture can penetrate. When the value of A is more than 10, the polymeric material layer 310, 312 may excessively extend so that the polymeric material layer can be easily bent and damaged by an external impact, or a thickness can be increased because a separate receiving part should be added.

'215 Patent at 4:38-57.  In light of the specification, there is no basis for Google's argument.  And there is no need to rewrite any claim language because the claims are consistent with the Figures.

Second, Google argues that "the claim language does not provide any direction or orientation of the extending portion," and suggests the extending portion could project in any direction.  Br. at 15-16.  To the contrary, the claims themselves require that "the first extending portion and the second extending portion are **connected to each other**."  As such, the extending portions cannot simply project in any direction without constraint.  Further, Figures 3, 5, and 10 illustrate extending portions that are connected to each other.  Google fails to address these Figures or explain why they do not provide reasonable certainty to a POSITA.

Google's arguments are also legally incorrect because claims are not indefinite merely because they are broad enough to encompass various embodiments.  *See, e.g.*, *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) ("breadth is not indefiniteness") (citation omitted); *CyWee Grp., Ltd. v. Huawei Device Co.*, No. 2:17-cv-00495-WCB-RSP, 2018 WL 6419484, at *20 (E.D. Tex. Dec. 6, 2018) ("That the claim is drafted broadly enough to cover multiple embodiments does not render the claim indefinite.").  Google's arguments further appear to be based on the wrong legal standard—*i.e.*, an improper requirement that the claims must enable the invention as opposed to indefiniteness (which involves understanding the claim scope).  *See, e.g.*, MPEP § 2164.08 (9th ed., Jan. 2018) ("One does not look to the claims but to the specification to find out how to practice the claimed invention.").

Finally, Defendants were able to apply these claim limitations to the alleged prior art in their IPRs without any feigned confusion or ambiguity as to the meaning of the terms. For example, Samsung and Google identified alleged first and second "extending portions" in the asserted Sakuma reference:



Ex. 1 (Samsung '215 IPR) at 26.  Defendants' IPRs do not suggest that the "extending portions" cannot be identified in the '215 Patent Figures or the alleged prior art.

For these reasons, Google cannot meet its burden to prove indefiniteness for this term.

4. **"a [first/second] magnetic sheet"**
   **'962 Patent, Claims 1, 7, 9, and 18**

| Scramoge's Proposed Construction | Samsung, Apple, and Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a [first/second] continuous planar magnetic material |

The term "a [first/second] magnetic sheet should be construed in light of its plain and ordinary meaning.  "Absent disclaimer or lexicography, the plain meaning of the claim controls."  *Toshiba Corp.*, 681 F.3d at 1369.  Defendants do not point to any disclaimer or otherwise argue that the patentee acted as its own lexicographer.  Accordingly, the term's plain and ordinary meaning controls.

Defendants propose an ambiguous construction for the terms "[first/second] magnetic sheet," and fail to provide any explanation as to what their construction requires or means.  Specifically, Defendants attempt to support their construction by first independently arguing that the magnetic sheets must be "planar," and second by independently arguing that the magnetic sheets must be "continuous."  But Defendants fail to provide any explanation of what the resulting construction of

"continuous planar" means.  And the specification confirms that Defendants' resulting construction is incorrect.  The Court should reject Defendants' construction.[3]

First, Defendants' construction is contradicted by the '962 Patent specification.  The specification describes that the magnetic sheets may be implemented in various forms:

> The soft magnetic layer 210 may include a metallic material or a ferrite material, and **may be implemented in various forms of a pellet, a plate, a ribbon, foil, a film, etc**. In an example embodiment, the soft magnetic layer 210 **may be a form in which a plurality of sheets including a single metal or an alloy powder** having soft magnetism (hereinafter, referred to as a soft magnetic metallic powder) **and a polymer resin are stacked**. In another example embodiment, the soft magnetic layer 210 may be an alloy ribbon, a stacked ribbon, foil, or a film including at least one of Fe, Co, and Ni. In still another example embodiment, the soft magnetic layer 210 **may be a composite including 90 wt % or more of FeSiCr flakes and 10 wt % or less of a polymer resin**. In yet another example embodiment, the soft magnetic layer 210 may be a sheet, a ribbon, foil, or a film including nickel-zinc (Ni—Zn) ferrite.

'962 Patent at 5:19-34.  Defendants fail to address the teachings of the specification or explain whether their construction includes or excludes these various embodiments.  For instance, the specification further teaches that the magnetic sheets may be comprised of "a soft magnetic metal powder and a polymer resin."  *Id*. at 2:13-15.  Thus, these various implementations described in the specification contradict Defendants' construction that the magnetic sheets must be "continuous planar."  Nothing in the intrinsic record supports Defendants' "continuous planar" limitation, which is simply made from whole cloth.

Second, Defendants' construction is contradicted by their IPRs for the '962 Patent.  Apple's IPR identifies a "first magnetic sheet" and "second magnetic sheet" (highlighted green) in the annotated Figure 3 from the Suzuki reference as shown below:

---

[3] Notably, Samsung and Google do not seek to construe the related terms "a [first/second] soft magnetic sheet" in claim 9 of the '370 Patent.  Defendants fail to explain why the terms in the '962 Patent should be construed to have a different meaning than the terms in the '370 Patent.



**Ex.1005, Fig. 3 (annotated); Ex.1003, ¶ 66.**

Ex. 7 (Apple '962 IPR) at 36.  Apple, however, fails to explain how the "second magnetic sheet" in the figure above is "continuous planar."  For example, the "receiving coil" (highlighted blue) results in a break or gap in the "second magnetic sheet."  Similarly, Samsung and Google's IPR identifies a "first magnetic sheet" (highlighted orange) and "second magnetic sheet" (highlighted green) in the annotated Figure from the Suzuki reference as shown below:



Ex. 8 (Samsung '962 IPR) at 22.  Samsung and Google, however, fail to explain how the "second magnetic sheet" in the figure above is "continuous planar."  Samsung and Google's IPR raises the same issue where the "NFC Coil" and "Wireless Power Receiving Coil" result in a break or gap

17

between adjacent surfaces of the "second magnetic sheet." Thus, Defendants' construction is contradictory, fails to provide any clarity, and would only serve to confuse the jury.

5. **"wherein a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate" '962 Patent, Claims 1 and 18**

| Scramoge's Proposed Construction | Samsung, Apple, and Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | wherein the highest point of the second magnetic sheet from the substrate **in between adjacent receiving coil portions** is higher than the lowest point of the receiving coil from the substrate at the adjacent receiving coil portions |

The term "a [first/second] magnetic sheet should be construed in light of its plain and ordinary meaning. Defendants improperly seek to import a limitation from an exemplary Figure into the term. However, "[a]bsent disclaimer or lexicography, the plain meaning of the claim controls." *Toshiba Corp.*, 681 F.3d at 1369. Here, there is no definition or disavowal that would justify limiting the ordinary meaning of the term to Defendants' unduly narrow construction (which seeks to limit the term to "in between adjacent receiving coil portions" only). Further, the '962 Patent specification, figures, and claims all make clear that the term is used consistent with its plain and ordering meaning. For example, Figure 5 plainly demonstrates where a height of the second magnetic sheet 500 from the substrate is higher than a height of the lowest position of the receiving coil 520 from the substrate:

**FIG. 5**



Accordingly, Defendants commit the "cardinal sin" of importing limitations from the exemplary Figures into the claims. *See, e.g.*, *Hill-Rom*, 755 F.3d at 1371 ("[W]e do not read limitations from the embodiments in the specification into the claims."); *Thorner*, 669 F.3d at 1366 ("It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words."); *Phillips*, 415 F.3d at 1320 (describing "reading a limitation from the written description into the claims" as "one of the cardinal sins of patent law") (internal quotation marks omitted).

Moreover, Defendants' argument based on Figure 5 is directly contradicted by Apple's explanation of the disputed term in its IPR. As seen in Apple's annotated Figure 5 from Apple's "Summary of the '962 Patent" in its IPR, Apple explained that this term can be applied to the far-left side of the receiving coil:



Ex.1001, Fig. 5 (annotated); Ex.1003, ¶ 29.

Ex. 7 (Apple '962 IPR) at 8. Nothing in the claim language precludes application to either side of the receiving coil (either on the far-left or far-right of Figure 5). As Apple admitted in its IPR, the far-left side of Figure 5 shows "a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate."

The '962 Patent does not impose any further limitation that would require Defendants' new construction that the term should be limited to only the portions *in between adjacent receiving coil portions* (highlighted green in Defendants' annotated Figure 5 below):



Br. at 19.  Simply because some of the Figures may show that the limitation is further satisfied in portions between adjacent receiving coil portions does not mean the Court should import this requirement from the Figures when the claims are "otherwise silent." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Corp.*, 830 F. App'x 305, 311 (Fed. Cir. 2020).  In fact, the specification confirms that the Figures are exemplary and the claims are not limited thereto:

> While the inventive concept is susceptible to various modifications and alternative forms, **specific embodiments thereof are shown by way of example in the drawings** and will herein be described in detail. **It should be understood, however, that there is no intent to limit the inventive concept to the particular forms disclosed**, but on the contrary, the inventive concept is to cover all modifications, equivalents, and alternatives falling within the spirit and scope of the inventive concept.

'962 Patent at 3:37-45.  Thus, there is simply no basis to import Defendants' limitation from the Figures into the claims.

Defendants further base their construction on limitations that are not required by the independent claims.  For example, Defendants argue that the Court should adopt their construction

because the antenna is "formed 'inside' of the magnetic sheet."  Br. at 20.  However, no such limitation is found in the independent claims, which simply recite "a receiving coil disposed on the second magnetic sheet."  Instead, such a limitation is only recited in certain dependent claims such as claim 7: "wherein a portion of the **receiving coil is embedded in** a portion of the second magnetic sheet."  Thus, the claims themselves further refute Defendants' argument.

Defendants' construction is further contradicted by their application of the disputed term to the alleged prior art in their IPRs.  For example, Apple applied the plain and ordinary meaning of this term to the Suzuki reference at the right side of the receiving coil, as seen below:



**Ex.1005, Fig. 3 (annotated); Ex.1003, ¶ 79.**

Ex. 7 (Apple '962 IPR) at 40.  Likewise, Samsung and Google applied the plain and ordinary meaning of this term to their asserted Suzuki-Okada combination at the right side of the receiving coil, as seen below:



Ex. 8 (Samsung '962 IPR) at 32.  Defendants' IPRs do not suggest that the claim could only be applied to portions *in between adjacent receiving coil portions* (as opposed to the side of the receiving coils). Thus, Defendants' IPRs directly contradict their construction proposed here, and the Court should reject it.

### 6. "a second polymeric film provided on the plurality of soft magnetic layers" '370 Patent, Claim 1

| Scramoge's Proposed Construction | Samsung and Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a second polymeric film in contact with more than one of the soft magnetic layers |

The issues raised for this term are identical to the issues addressed above for the terms "[arranged/provided] on" and "a [first/second] surface of the plurality of soft magnetic layers." The '370 Patent is a continuation of the '215 Patent, and therefore the same arguments apply here.  *See SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'") (citation omitted).  The Court should reject Samsung and Google's construction for the same reasons set forth above.

In addition to the arguments above, Samsung and Google's citation to the '370 Patent specification in support of their argument (Br. at 22) is directly contradicted by dependent claims 9

and 10, which recite an *additional* soft magnetic layer for the near field communication ("NFC") that surrounds a side surface of the plurality of soft magnetic layers:

> 9. The board of claim 1, wherein the plurality of soft magnetic layers includes a first soft magnetic sheet and a second soft magnetic sheet, and the second soft magnetic sheet is provided on the first soft magnetic sheet.

> 10. The board of claim 9, **further comprising a soft magnetic layer for near field communication provided to surround a side surface of the first soft magnetic sheet and the second soft magnetic sheet**.

'370 patent, Claims 9 and 10.  In other words, these dependent claims confirm that the "second soft magnetic layer 230" for NFC that is discussed in Defendants' cited portion of the specification may be an *additional* soft magnetic layer beyond the "plurality" recited in independent claim 1. Thus, Defendants' reliance on the specification (as well as Figures 2 and 5) does not support their construction because the "second soft magnetic layer 230" for NFC is not required by the independent claim—rather, it is specified by dependent claim 10.

### 7. "plurality of soft magnetic layers provided on the first adhesive layer" '370 Patent, Claim 1

| Scramoge's Proposed Construction | Samsung and Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | more than one soft magnetic layer in contact with the first adhesive layer |

The issues raised for this term are identical to the issues addressed above for the terms "[arranged/provided] on" and "a [first/second] surface of the plurality of soft magnetic layers."  The '370 Patent is a continuation of the '215 Patent, and therefore the same arguments apply here.  *See SightSound Techs.*, 809 F.3d at 1316.  The Court should reject Samsung and Google's construction for the same reasons set forth above.

**8.  "the [first/second] polymer film includes a [first/second] extending portion that extends further than the plurality of soft magnetic layers"**
    **'370 Patent, Claim 1**

| Scramoge's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Google's indefiniteness argument for this term is substantially identical to the argument addressed above for the term "the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layers / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers."  The '370 Patent is a continuation of the '215 Patent, and therefore the same arguments apply here.  *See SightSound Techs.*, 809 F.3d at 1316.  The only notable difference is that this term uses the language "extending further" instead of "extending longer."  However, in the context of the claims, this language is synonymous and does not change the analysis.

Thus, Google cannot meet its burden to prove indefiniteness, and the Court should reject its argument for the same reasons set forth above.

**9.  "a [first/second] extending adhesive portion that extends further outward than the side portion of the plurality of soft magnetic layers, and a portion of the first extending adhesive portion is provided in the connected area"**
    **'370 Patent, Claims 12 and 15**

| Scramoge's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Google's indefiniteness argument for dependent claims 12 and 15 is substantially identical to the argument addressed above for the term "the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layers / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers."  The '370 Patent is a continuation of the '215 Patent, and therefore the same arguments apply here.  *See SightSound Techs.*, 809 F.3d at 1316.  The only notable difference is that this term uses the language "extends further outward" instead of "extending longer."

However, in the context of the dispute here, this difference is irrelevant and does not change the analysis.  For example, an "extending adhesive portion" (highlighted red) is shown in Figure 10 below:



FIG. 10

'370 patent, Fig. 10.

Thus, Google cannot meet its burden to prove indefiniteness, and the Court should reject its argument for the same reasons set forth above.

### 10. "a predetermined intensity"
### '941 Patent, Claim 1

| Scramoge's Proposed Construction | Samsung and Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a magnetic intensity that, when detected by the transmitter, causes the transmitter to transmit power |

The parties have filed stipulations to dismiss the '941 Patent.  *Apple* Dkt. No. 45; *Samsung* Dkt. No. 47.  Thus, this term is no longer at issue in this case.

### 11. "receiving space"
### '740 Patent, Claims 1-3, 6, 7, and 8 (Google), Claims 6, 7, and 16 (Apple)

| Scramoge's Proposed Construction | Apple and Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | empty space for the connecting unit extending from one surface of the substrate to an opposing surface of the substrate |

Apple and Google incorporate by reference the arguments in Apple's claim construction brief regarding the '565 Patent.  Scramage agrees that the issues are the same and that the term should be construed consistently in both patents.  Scramoge therefore incorporates by reference, as though wholly set forth herein, the arguments set forth in its response to Apple's claim construction brief regarding the '565 Patent.  The Court should reject Defendants' construction here for the same reasons.

## III.  CONCLUSION

For the foregoing reasons, Scramoge respectfully requests that the Court adopt its proposed construction for each of the disputed claim terms.

Dated:  January 28, 2021

Respectfully submitted,

_/s/ Brett E. Cooper_
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Brett E. Cooper (NY SBN SBN 4011011)
bcooper@raklaw.com
Brian D. Ledahl (CA SBN 186579)
bledahl@raklaw.com
Seth Hasenour (TX SBN 24059910)
shasenour@raklaw.com
James A. Milkey (CA SBN 281213)
jmilkey@raklaw.com
Drew B. Hollander (NY SBN 5378096)
dhollander@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com

RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
Facsimile: (310) 826-6991

_Attorneys for Plaintiff_
_Scramoge Technology Limited_

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on January 28, 2022 with a copy of this document via the Court's ECF system.

*/s/ Brett E. Cooper*
Brett E. Cooper