**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SCRAMOGE TECHNOLOGY LTD., | § | Civil Action No. 6:21-cv-00454-ADA |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| AND SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| SCRAMOGE TECHNOLOGY LTD., | § | Civil Action No. 6:21-cv-00579-ADA |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| SCRAMOGE TECHNOLOGY LTD., | § | Civil Action No. 6:21-cv-00616-ADA |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANTS' JOINT REPLY CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.      DISPUTED TERMS ................................................................................................. 1

    1.   ["arranged/provided] on" ............................................................................. 1

    2.   "a [first/second] surface of the plurality of soft magnetic layers" ............................ 4

    3.   "the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layer / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers" ................................................................................ 7

    4.   "a [first/second] magnetic sheet" ............................................................... 12

    5.   "wherein a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate" ................................................................... 14

    6.   "a second polymeric film provided on the plurality of soft magnetic layers" ................................................................................................... 17

    7.   "plurality of soft magnetic layers provided on the first adhesive layer" ................ 17

    8.   "the [first/second] polymer film includes a [first/second] extending portion that extends further than the plurality of soft magnetic layers" ................ 17

    9.   "a [first/second] extending adhesive portion that extends further outward than the side portion of the plurality of soft magnetic layers, and a portion of the [first/second] extending adhesive portion is provided in the connected area" ................................................................................ 18

    10.   "a predetermined intensity" ................................................................... 19

    11.   "receiving space" ............................................................................... 19

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Acacia Media Techs. Corp. v. New Destiny Internet Grp.*,
    405 F. Supp. 2d 1127 (N.D. Cal. 2005) ................................................................... 14

*Actavis Lab'ys UT, Inc. v. UCB, Inc.*,
    No. 2:15-cv-1001-JRG-RSP, 2016 WL 3678987 (E.D. Tex. July 11, 2016) .......................... 11

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
    808 F.3d 1313 (Fed. Cir. 2015) .................................................................................. 2

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002) ................................................................................ 13

*Altair Eng'g, Inc. v. LEDdynamics, Inc.*,
    413 F. App'x 251 (Fed. Cir. 2011) ............................................................................. 2

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) ................................................................................. 5

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
    616 F.3d 1249 (Fed. Cir. 2010) ............................................................................... 21

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006) ................................................................................. 22

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
    224 F.3d 1308 (Fed. Cir. 2000) ............................................................................... 20

*Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
    677 F.3d 1361 (Fed. Cir. 2012) ........................................................................... 20, 21

*CloudofChange, LLC v. NCR Corp.*,
    No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) ............................ 9

*Cohesive Tech., Inc. v. Waters Corp.*,
    543 F.3d 1351 (Fed. Cir. 2008) ............................................................................... 22

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006) ................................................................................. 3

*Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*,
    501 F.3d 1254 (Fed. Cir. 2007) ............................................................................... 12

*Enzo Biochem, Inc. v. Applera Corp.*,
    599 F.3d 1325 (Fed. Cir. 2010) ........................................... 10

*In re Collier*,
    397 F.2d 1003 (C.C.P.A. 1968) ........................................... 14

*In re Fought*,
    941 F.3d 1175, 131 U.S.P.Q.2d 422062 (Fed. Cir. 2019) ...................... 11

*Luv N' Care, Ltd. v. Koninklijke Philips Elecs. N.V.*,
    No. 2:11-CV-512-RSP, 2013 WL 3471269 (E.D. Tex. July 9, 2013),
    *aff'd sub nom. Luv N' Care Ltd. v. Philips Elecs. N. Am. Corp.*, 587 F. App'x 657 (Fed. Cir.
    2014); *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008) ...... 9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ..................................................... 14

*Negotiated Data Sols., LLC v. Dell, Inc.*,
    596 F. Supp. 2d 949 (E.D. Tex. 2009) .................................... 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ...................................... 7, 8, 9

*Pisony v. Commando Constr., Inc.*,
    No. W-17-CV-00055-ADA, 2019 WL 928406 (W.D. Tex. Jan. 23, 2019) ............ 22

*SightSound Technologies, LLC v. Apple Inc.*,
    809 F.3d 1307 (Fed. Cir. 2015) ......................................... 20

*Sonix Tech. Co. v. Pub'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ......................................... 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    814 F.3d 1309 (Fed. Cir. 2016),
    *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) .. 14

*Tandon Corp. v. Int'l Trade Comm'n*,
    831 F.2d 1017 (Fed. Cir. 1987) ......................................... 2

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) ......................................... 10

*Twist, Inc. v. B GSE Group, LLC*,
    No. 3:19-cv-00583-MOC-DSC, 2021 WL 2210892 (W.D.N.C. June 1, 2021) ........ 11

*Whirlpool Corp. v. Ozcan*,
    Nos. 2:15-cv-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ........... 11

*WSOU Invs., LLC v. Microsoft Corp.*,
    No. 6:20-cv-00454-ADA, Dkt. 62 (W.D. Tex. Mar. 17, 2021)................................................ 10

# INTRODUCTION

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. ("Samsung"), Apple Inc. ("Apple"), and Google LLC ("Google") (collectively "Defendants"), hereby submit this Reply claim construction brief, pursuant to the parties' Agreed Scheduling Orders (Dkts. 46, 33, and 28, respectively), to construe terms of U.S. Patent Nos. 9,843,215 ("the '215 Patent"); 9,997,962 ("the '962 Patent"); 10,367,370 ("the '370 Patent"); 10,424,941 ("the '941 Patent"); and 10,804,740 ("the '740 Patent").[1]

## I.    DISPUTED TERMS

1.    ["arranged/provided] on"
      '215 Patent, Claims 1, 9, 13 and 19
      '370 Patent, Claims 1 and 9

| Samsung, Apple, and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| in contact with | Plain and ordinary meaning |

Defendants' proposed construction provides necessary clarity to this term which is absent in the specification.

First, contrary to Scramoge's assertion, Defendants' proposed construction is not "unduly narrow" because "in contact with" allows for direct contact or indirect contact through an adhesive layer. Responsive Brief ("RB") (Dkt. 35), 2. Defendants' construction is rooted in the specification and provides clarity that will allow the jury to understand this term. *See* Opening Brief ("OB")

---

[1] Defendants file this brief jointly. U.S. Patent Nos. 9,843,215 ("the '215 Patent"); 9,997,962 ("the '962 Patent"); 10,367,370 ("the '370 Patent"); and 10,804,740 ("the '740 Patent") are asserted in *Scramoge Tech. Ltd. v. Google LLC*, No. 6:21-cv-00616-ADA. The '215 Patent, '962 Patent, and '370 Patent are asserted in *Scramoge Tech. Ltd. v. Samsung Elecs. Co., Ltd.*, No. 6:21-cv-00454-ADA. The '740 Patent is not asserted against Samsung. The '215 Patent, '962 Patent, and '740 Patent are asserted in *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA. The '370 Patent is not asserted against Apple. Google, Apple, and Samsung reserve all rights with respect to the patents not asserted by Scramoge at this time.

(Dkt. 33), 8. While the language in the specification does not describe what it means for one element to be "arranged on" or "provided on" another element, the drawings shed light on what these positioning terms require. *Id.* (citing *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317-18 (Fed. Cir. 2015); *Altair Eng'g, Inc. v. LEDdynamics, Inc.*, 413 F. App'x 251 (Fed. Cir. 2011); *Negotiated Data Sols., LLC v. Dell, Inc.*, 596 F. Supp. 2d 949, 964 (E.D. Tex. 2009)).

Second, Scramoge incorrectly argues that "[t]he patentees' choice of the different terms 'arranged' and 'contact' in the claims confirms that they are not intended to have the same meaning." RB, 2. The different terms confirm no such thing. Rather, the patentee used "arranged/provided on" for the polymeric layers and soft magnetic layers, and "contact each other" for the first and second extending portions. No matter whether the terms are construed as the same or different, no conflict is created within the claims. *Tandon Corp. v. US Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant."). Accordingly, there is no need to distinguish these terms from one another. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) ("Different claims with different words can, of course, define different subject matter within the ambit of the invention. On the other hand, claim drafters can also use different terms to define the exact same subject matter.").The figures of the '215 and '370 Patents also confirm that Defendants' proposed construction is correct. The figures show that the second polymeric material layer contacts the second surface of the plurality of soft magnetic layers (directly or indirectly through an adhesive layer) and the coil pattern contacts the second polymeric material layer. '215 Patent, Figs. 1-5, 9-10. Moreover, claim 5 expressly allows for the first

2

polymeric layer to be "arranged on" (i.e., in contact with) the plurality of soft magnetic layers through an adhesive layer. *Compare* '215 Patent, Claim 5 ("The wireless charging and communication board of claim 1, further comprising an adhesive layer that adheres the first polymeric material layer and the second polymeric material layer to the plurality of soft magnetic layers."), *with id.,* Claim 1 ("a first polymeric material layer arranged on a first surface of the plurality of soft magnetic layers"). Defendants' construction is thus supported by the specification, other claims, and each of the figures.

Third, Defendants' construction is not contradicted by Samsung and Google's IPR petition. To the contrary, the petition is entirely consistent with Defendants' proposed construction, with "arranged on" meaning to be in direct or indirect contact with the other parts in the embodiment. Scramoge concedes this point, acknowledging that Defendants' proposed construction allows for "intervening adhesive layers" consistent with the '215 Patent's described embodiments. RB, 1 (quoting Dkt. 35-2 (Samsung's '215 IPR petition) ("For example, the '215 Patent describes embodiments where polymeric layers (310/312) are 'arranged on' soft magnetic layers (220/230) despite the presence of intervening adhesive layers 315.")).

Fourth, Defendants are not importing limitations from the figures. Defendants simply referred to exemplary embodiments, but the remaining figures also show that each of these elements that is "arranged on" or "provided on" another element must contact that element directly or through an adhesive layer. Figures 3 and 5, showing the second polymeric material layer contacts the second surface of the plurality of soft magnetic layers and the coil pattern contacts the second polymeric material layer, are merely exemplary. Figures 1, 2, 4, 9, and 10 also show that the polymeric layers are in direct contact, or indirect contact through an adhesive layer, with the soft magnetic layers.

Last, Scramoge points to portions of the specification that mention the possibility of minor modifications to the figures, but these are boilerplate recitations in patent drafting. More importantly, as explained above, Defendants' construction is not based on particular embodiments—instead it is grounded in the specification and claim language, and consistent with all of the disclosed embodiments.

Accordingly, Defendants request the Court adopt their proposed construction.

### 2.    "a [first/second] surface of the plurality of soft magnetic layers" '215 Patent, Claims 1 and 13

| Samsung, Apple, and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| a [first/second] surface of more than one of the soft magnetic layers | Plain and ordinary meaning |

Defendants' proposed construction reflects the proper scope of the claims, giving the term "plurality" its accepted meaning and not excluding any embodiments. Scramoge, on the other hand, seeks to improperly broaden the scope of the claims by reading out the term "plurality" and asserting that the claims can be met when the [first/second] polymeric material layer only contacts one surface of *one* soft magnetic layer. Scramoge's arguments are meritless for the reasons set forth below.

First, Scramoge does not dispute that Defendants' proposed construction merely affords the term "plurality" its recognized meaning of "more than one." RB, 7. Although Scramoge dismisses the authority cited by Defendants as "irrelevant," it is not, and it compels Defendants' proposed construction. Defendants seek a construction of "plurality" as "more than one of," which gives proper effect to the claim language. The claims recite a "[first/second] surface of a ***plurality*** of soft magnetic layers" which requires that the "[first/second] surface" contain more than one soft magnetic layer. It is Scramoge that attempts to rely on inapposite case law to avoid this

construction. The case of *Baldwin Graphic Sys., Inc. v. Siebert, Inc.* does not address the meaning of "plurality." 512 F.3d 1338, 1342 (Fed. Cir. 2008).

Second, Defendants' proposed construction that is supported by this authority is also entirely consistent with the claims, figures, written description, and prosecution history of the '215 Patent. Scramoge's arguments to the contrary are incorrect.

Defendants' proposed construction would not "exclude from the scope of the claims" the embodiments shown in Figures 9 and 10. *See* RB. 5-7. While Defendants' Opening Brief relied on Figure 2 as an example, the same concepts are also illustrated in Figures 9 and 10. These figures also show a surface comprising a "plurality" (i.e., "more than one") of soft magnetic layers, as described in the specification. For example, as shown in annotated Figure 9 below, the **first surface of the plurality of magnetic layers** comprises more than one soft magnetic layer, e.g., the **first magnetic layer** and **third magnetic layer**. The **second surface of the plurality of magnetic layers** also comprises more than one soft magnetic layer, e.g., the **second magnetic layer** and the **fourth magnetic layer**. Contrary to Scramoge's assertion (RB, 7), the polymeric material layer (310, 312) is still adjacent to a plurality of soft magnetic layers.



Defendants' construction would also not exclude the embodiments recited in claims 6, 9,

and 19. *See* RB. 7-8. Defendants' construction allows for a plurality of soft magnetic layers, where the soft magnetic layers are arranged on each other as exemplified above in Figure 9. The second soft magnetic layer is arranged on or provided on the first soft magnetic layer. And, with respect to claim 6, Defendants' construction allows for an air gap between the plurality of soft magnetic layers, the first extending portion, and the second extending portion.

Scramoge's argument that Defendants' construction would mean that claim 6 "would not include any of the Figures illustrated in the patent because the air gap . . . is not adjacent to both the first soft magnetic layer 220 and the second soft magnetic layer 230" is incorrect. Defendants' construction allows for this arrangement—and the claims do not require the air gap to be adjacent to the first magnetic layer and soft magnetic layer. Claim 6 requires that an air gap is "formed between ***the plurality of soft magnetic layers***, the first extending portion, and the second extending portion." Scramoge improperly seeks to limit the claims to require that the air gap is adjacent to the first and second soft magnetic layer. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

Defendants' construction is consistent with the prosecution history. *See* RB. 8-9. As explained above, Defendants' construction does not exclude the second embodiment. Indeed, if any interpretation is limiting, it is Scramoge's because it excludes the first embodiment by requiring that the plurality of magnetic layers are arranged in a vertical fashion while Defendants' construction allows for both embodiments.

Finally, Defendants' construction is not contradicted by Apple's IPR petition for the '215 Patent. *See* RB. 9-10. Apple relied on art in which a magnetic sheet is encapsulated in a polymer resin such that the polymer is on a top surface of the magnetic sheet, a bottom surface of the magnetic sheet, and sides of the magnetic sheet, which consist of more than one magnetic plate.

*See* Dkt. 35-7 at 34, 39:



Ex.1005, Fig. 3 (annotated); Ex.1003, ¶ 79.

Scramoge's attempt to offer an implicit construction for this term that is inconsistent with the intrinsic record should be rejected. As Defendants have shown, there is a dispute with regard to the ordinary meaning of this term, and thus a construction is needed. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).  As only Defendants have offered a construction—and as explained herein, it is the correct construction—Scramoge's proposal should be rejected and Defendants' construction adopted.

Accordingly, Defendants request the Court adopt their proposed construction.

**3.    "the [first/second] polymeric material layer includes a [first/second] extending portion extending longer than the plurality of soft magnetic layer / the [first/second] polymeric material layer comprises a [first/second] extending portion extending longer than the plurality of soft magnetic layers" '215 Patent, Claims 1 and 13**

| Google's Proposed Construction | Scramoge's Proposed Construction |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

The issue concerns a contradiction between the claim language and the specification. The claims recite "extending portion[s] ***extending longer*** than the plurality of soft magnetic layers," whereas the patent only describes and illustrates the opposite—extending portions ***shorter*** than the

magnetic layers. OB, 14, 15.

Scramoge embraces this contradiction, yet asserts that the term should be given a plain and ordinary meaning whereby extending portions are *shorter* than the soft magnetic layers. RB, 12, 13. Scramoge fails to address why its proposed plain and ordinary meaning is the opposite of the plain language of the claim, and Google requests that the Court resolve the difference. *See CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *3 (W.D. Tex. July 15, 2020) ("As both parties disagree about the scope of the term, the term requires construction by the Court." (quoting *O2 Micro*, 521 F.3d at 1362 ("When the parties present fundamental disputes regarding the scope of a claim term, it is the court's duty to resolve it."))). To accept Scramoge's proposal would improperly substitute in new language that directly contradicts the claim. *Luv N' Care, Ltd. v. Koninklijke Philips Elecs. N.V.*, No. 2:11-CV-512-RSP, 2013 WL 3471269, at *27 (E.D. Tex. July 9, 2013) (rejecting plaintiff's plain and ordinary proposal that substituted words in place of claim terms), *aff'd sub nom. Luv N' Care Ltd. v. Philips Elecs. N. Am. Corp.*, 587 F. App'x 657 (Fed. Cir. 2014); *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008) ("[A]bsent contravening evidence . . . plain and unambiguous claim language controls the construction analysis."). Scramoge fails to address why it proposes that the plain and ordinary meaning is the opposite of the claim language. Further, rather than address why the Court should correct a clear error, Scramoge advances five, unpersuasive arguments attacking Google's arguments.

***First***, Scramoge's argument that this Court cannot find indefiniteness absent expert testimony is legally flawed. RB, 10, 11. This Court has and is fully capable of resolving indefiniteness without extrinsic expert testimony. *See, e.g., WSOU Invs., LLC v. Microsoft Corp.*, No. 6:20-cv-00454-ADA, Dkt. 62 (W.D. Tex. Mar. 17, 2021) (holding six terms indefinite despite

Plaintiff's insistence that expert testimony was required). There is no expert testimony requirement to find a claim indefinite. *See Sonix Tech. Co. v. Pub'ns Int'l.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017) ("[A] party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it. The internal coherence and context assessment of the patent, and whether it conveys claim meaning with reasonable certainty, are questions of law." (quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015))); *see also Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010).

Scramoge's cases do not support its position. In *Twist, Inc. v. B GSE Grp., LLC¸* the Court determined that the terms at issue were ordinary and easily understood by a layperson, such that without expert testimony their common meaning should not be disturbed. No. 3:19-cv-00583-MOC-DSC, 2021 WL 2210892, *8 (W.D.N.C. June 1, 2021). In *Whirlpool Corp. v. Ozcan*, the Court did not reject Defendant's arguments for failing to submit an expert declaration, but rather because the Court found Defendant's argument based on the intrinsic evidence to be unpersuasive. Nos. 2:15-cv-2103-JRG, 2016 WL 7474517, *3 (E.D. Tex. Dec. 29, 2016).

**Second**, Scramoge incorrectly argues that the Court cannot determine indefiniteness without Google proposing a level of skill for a POSITA. RB, 10, 11. The claims are ambiguous on their face, and a determination of the level of skill of a POSITA is inconsequential to indefiniteness. *Actavis Lab'ys UT, Inc. v. UCB, Inc.*, No. 2:15-cv-1001-JRG-RSP, 2016 WL 3678987, at *6-7 (E.D. Tex. July 11, 2016); *see also In re Fought*, 941 F.3d 1175, 1179, 131 U.S.P.Q.2d 422062, at *3-4 (Fed. Cir. 2019) (instructing that the PTO need not make a finding as to the level of ordinary skill in the art unless the applicant "places the level of ordinary skill in the art in dispute and explains with particularity how the dispute would alter the outcome").

9

Accordingly, Google is not required to identify, much less prove, a level of ordinary skill – that determination, if necessary, is at the Court's discretion. *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (discussing non-exhaustive factors the Court may use in determine an ordinary level of skill).

*Third*, Scramoge points to the figures, specification, and claims to dispute Google's construction. Scramoge argues, without explanation, that the claim language provides context for the disputed terms. *Id.* at 12. Connecting the first and second extending portions does not address the lengths of extending portions relative to the soft magnetic layers. Scramoge also insists that "Figures 1-5, 9, and 10 all illustrate the various embodiments of the [disputed terms]" and "a POSITA would not have any problem understanding the scope of the claims." RB, 12. Again, Scramoge fails to explain, and unhelpfully alleges that "Google's annotated Figure 2 identified the 'extending portions' (highlighted red) consistent with the claim language." *Id*. at 12, 13. The *identity* of the "extending portions" is not the issue. It's whether the extending portions "extend[] longer" than the soft magnetic layers. They do not, and Scramoge not explained why a POSITA would understand otherwise.

Further, Scramoge cites the specification highlighting the contradiction described above. RB, 12, 13. The specification and figures have the polymeric material layers *extending longer* than the magnetic layers. '215 Patent, Figs. 1-5, 9, 10; 3:39-43, 4:26-31, 5:26-30 ("a polymeric material layer . . . extending longer than . . . the soft magnetic layer 220"); 6:34-35. There are no extending portions extending longer than the magnetic layers. All are *shorter*.

In the same section, Scramoge emphasizes the length "l," as shown in the annotated figure above, as somehow resolving this fundamental contradiction. Again, Scramoge does not explain how this is helpful, and it is not. The specification defines l=Axh, where "A" is a constant and "h"

is the soft magnetic layer thickness. *Id*. at 4:39-50. The length of the extending portion has no relationship to the length of the magnetic layers. The specification does not resolve the fundamental contradiction.

Last, Google nowhere recommended rewriting the claims as Scramoge contends.  RB, 14-15. That would be legally improper. Scramoge cannot have the Court fix a fundamental error in claim drafting through claim construction. *Id*. (citing *Allen Eng'g Corp. v. Bartell Indus., Inc*., 299 F.3d 1336, 1349 (Fed. Cir. 2002) ("It is not [the Court's] function to rewrite claims to preserve their validity.").

**Fourth**, Scramoge implicitly agrees that the claims do not provide a direction or orientation of the extending portions. Scramoge alleges that "the . . . extending portion[s] are connected to each other" means that the extending portions "cannot simply project in any direction without constraint." RB, 14. Again, Scramoge does not explain how this claim language defines the direction or orientation of the extending portions, and it does not.

Further, Scramoge argues direction and orientation concern claim breadth, and "breadth is not indefiniteness." RB, 14. While the latter is true, Scramoge's emphasis on breadth detracts from the indefiniteness standard: whether the "claims, read in light of the specification . . . and the prosecution history, fail to inform, *with reasonable certainty*, [a POSITA] about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (emphasis added). The claims recite direction and orientation of all claim elements, except the extending portions. Failing to claim the orientation or direction of the extending portion omits an essential element necessary to understand the bounds of the claims. *See In re Collier*, 397 F.2d 1003, 1005 (C.C.P.A. 1968) (affirming rejection of claim that "does not positively recite structural relationships of the two elements"); *Acacia Media Techs. Corp. v. New Destiny Internet Grp.*, 405 F. Supp. 2d 1127,

1138 (N.D. Cal. 2005) ("Patents . . . are indefinite under § 112 if the claim does not recite structural relationships of essential elements."). Scramoge fails to address how a POSITA could be reasonably certain of the bounds of the invention without essential structural relationships.

**Fifth**, Scramoge argues the terms cannot be indefinite because defendants presented prior art showing an "extending portion" in IPR petitions. "[IPRs] cannot replace the district court . . . when claims are challenged . . . on grounds of indefiniteness." *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017). For the IPR challenge, Petitioners provisionally adopted an interpretation consistent with Scramoge's infringement contentions (and inconsistent with the claim language). The provisional adoption of a claim interpretation for IPR does not prove or even suggest that the claims are definite.

Google has shown in its Opening Claim Construction Brief that the terms are indefinite. For the reasons discussed above, Scramoge fails to refute that showing.

### 4.    "a [first/second] magnetic sheet"
'962 Patent, Claims 1, 7, 9, and 18

| Samsung, Apple, and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| a [first/second] continuous planar magnetic material | Plain and ordinary meaning |

Scramoge's allegations that Defendants' construction introduces ambiguity into the claims is baseless. Defendants' proposed construction is straight forward. It requires a magnetic sheet that is both "continuous" and "planar." These simple requirements are readily ascertainable to a jury. First, a magnetic sheet that is "continuous" does not have gaps or breaks between adjacent surfaces. Dkt. 45 at 17. Second, magnetic sheets that are planar simply lay in a plane. *Id.* at 16-17.

Defendants' proposed construction is consistent with the description of the magnetic sheets

in the '962 Patent. While Scramoge points to the patent's description of a soft magnetic layer that is *deposited* in various forms, RB, 16, the final form of these magnetic sheets is continuous and planar, consistent with how a POSITA would understand the term.

Finally, Scramoge incorrectly asserts that Defendants' proposal is contradicted by Defendants' IPR petitions. *See* RB, 17. To the contrary, the very images contained in Scramoge's own briefing show that the magnetic sheets are "continuous" and "planar." *Id.* For example, the magnetic layer 171 in the Suzuki reference from Apple's IPR is a continuous and planar magnetic material, as the lower portion of the magnetic sheet is unaffected by the receiving coil:



**Ex.1005, Fig. 3 (annotated); Ex.1003, ¶ 66.**

Similarly, the second magnetic sheet in the Suzuki-Okada combination of Samsung's petition is continuous and planar material for the same reason:



Accordingly, Defendants' proposal is readily understandable to a jury and consistent with its interpretation in the IPRs.

**5.    "wherein a height of a highest position of the second magnetic sheet from the substrate is higher than a height of a lowest position of the receiving coil from the substrate"**
**'962 Patent, Claims 1 and 18**

| Samsung, Apple, and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| wherein the highest point of the second magnetic sheet from the substrate in between adjacent receiving coil portions is higher than the lowest point of the receiving coil from the substrate at the adjacent receiving coil portions | Plain and ordinary meaning |

Scramoge's broad view of this term—that only a distant edge of the second magnetic sheet must be higher than any portion of the receiving coil—should be rejected.

First, Scramoge incorrectly asserts that Defendants seek to import a limitation from "an exemplary Figure into the term." RB, 18-19. Defendants' proposed construction does no such thing. Instead, it merely clarifies—consistent with *every* figure and description in the patent—that the "highest position" and "lowest position" in the claims are compared at adjacent coil portions. *See* Dkt. 45 at 18 (citing '962 Patent at Fig. 5, 2:2-4 (the receiving coil is "wound in parallel with

a soft magnetic layer and formed inside of the soft magnetic layer")). Tellingly, Scramoge's response is only to cite boilerplate language that "specific embodiments thereof are shown by way of example in the drawings" and "there is no intent to limit the inventive concept to the particular forms disclosed." RB, 20 (citing '962 Patent at 3:37-45).

Second, Scramoge once again misstates the arguments in corresponding IPR petitions. The references in those IPRs disclose precisely the same arrangement described in the '962 Patent—a second magnetic sheet of consistent height not only at the edge of the receiving coil but also in between adjacent receiving coils. For example, both the Suzuki reference in Apple's IPR petition and the Suzuki-Okada combination relied upon in Samsung and Google's IPR petition disclose that a highest point of the second magnetic sheet from the substrate in between adjacent receiving coil portions is higher than the lowest point of the receiving coil from the substrate at the adjacent receiving coil portions, as shown in the annotated figures below:



Ex.1005, Fig. 3 (annotated); Ex.1003, ¶ 79.



Finally, Defendants' construction is consistent with the plain language of both the independent and dependent claims. Scramoge asserts that dependent claim 7's requirement of a receiving coil "embedded is a portion of the second magnetic sheet" conflicts with Defendants' proposed construction that the antenna be formed "inside" of the magnetic sheet. RB, 20-21. These are entirely different limitations, and in no way conflict. The '962 Patent discloses that when the receiving coil is embedded in the second magnetic sheet, "the soft magnetic layer 500 includes a groove portion to accommodate the receiving coil 520 inside of the soft magnetic layer." '962 Patent at 6:19-26. Dependent claim 7 is directed to that embodiment. Defendants' construction does not require that the second magnetic sheet include a "groove portion" to accommodate the receiving coil. It only requires that the second magnetic sheet rise above the receiving coil when measured in between adjacent receiving coil portions, such as when a receiving coil is compressed into a planar magnetic sheet—a result the specification compels.

### 6. "a second polymeric film provided on the plurality of soft magnetic layers" '370 Patent, Claim 1

| Samsung and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| a second polymeric film in contact with more than one of the soft magnetic layers | Plain and ordinary meaning |

Google and Samsung agree that the issues here are addressed above in sections I.1 and I.2.

The Court should adopt Defendants' construction here for the same reasons set forth above.

### 7. "plurality of soft magnetic layers provided on the first adhesive layer" '370 Patent, Claim 1

| Samsung and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| "more than one soft magnetic layer in contact with the first adhesive layer" | Plain and ordinary meaning |

Google and Samsung agree that the issues here are addressed above in sections I.1 and I.2.

The Court should adopt Defendants' construction here for the same reasons set forth above.

### 8. "the [first/second] polymer film includes a [first/second] extending portion that extends further than the plurality of soft magnetic layers" '370 Patent, Claim 1

| Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

Relying on *SightSound Techs, LLC v. Apple Inc.*, 809 F.3d 1307 (Fed. Cir. 2015), Scramoge argues that because the '370 Patent is a continuation of the '215 Patent, this term should be construed the same as Section I.3. RB, 24. Scramoge's assumption flies in the face of *SightSound Techs.*, which requires common constructions for common terms, not for *different* terms. 809 F.3d at 1316 ("Where multiple patents 'derive from the same parent application and share many common terms, **we must interpret the claims** <u>**consistently**</u> across all asserted

17

patents.'" (emphasis added)). Scramoge acknowledges that the terms are not the same. RB, 24. The '215 Patent recites "extending longer," and the '370 Patent recites "extending further." *SightSound Techs.* recognizes that dissimilar terms are construed differently. *Id.* at 1318 (applying claim differentiation). There is a "general presumption that different terms have different meanings." *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch.*, *LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012); *see also CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

Scramoge fails to overcome the presumption that "extending longer" and "extending further" connote different meanings. *See* RB, 23 ("in the context of the claims, this language is synonymous and does not change the analysis"). Scramoge's inability to distinguish them emphasizes that POSITA would be unable to determine their dissimilar bounds.

9.   **"a [first/second] extending adhesive portion that extends further outward than the side portion of the plurality of soft magnetic layers, and a portion of the [first/second] extending adhesive portion is provided in the connected area"**
**'370 Patent, Claims 12 and 15**

| Google's Proposed Construction | Scramoge's Proposed Construction |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

Again, Scramoge jumps to conclusions contrary to established law. Scramoge insists that "extends further outward" and "extends longer" are synonymous because "this difference is irrelevant and does not change the analysis." RB, 25. Far from irrelevant, the difference creates a presumption that the terms are not synonymous. *Chi. Bd. Options Exch.*, 677 F.3d at 1369 (stating there is a "general presumption that different terms have different meanings"). Scramoge's naked assertions of irrelevance fail to overcome this presumption.

Moreover, Scramoge equates "extends further outward" and "extends longer." Scramoge does not address Google's position regarding the distinction between "extend further than" and "extend further **outward** than." OB, 28. Here, the canons of claim construction require that "extend further than" and "extend further outward than" be construed differently. *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be 'interpreted with an eye toward giving effect to all terms in the claim,'" and avoiding "a claim construction which would render a claim limitation meaningless." (citations omitted)); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (reading out limitations is "contrary to the principle that claim language should not [be] treated as meaningless"); *see also Cohesive Tech., Inc. v. Waters Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) (rejecting narrow construction for reading "about" out of the claim); *Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *3 (W.D. Tex. Jan. 23, 2019) ("[C]laim differentiation creates a presumption that a limitation included in a dependent claim is not also recited in the claim from which that claim depends."). Because a POSITA could not, with reasonable certainty, ascertain the meaning of the ambiguous claim term, the claims are indefinite. OB, 26, 27.

### 10. "a predetermined intensity"
### '941 Patent, Claim 1

The '941 Patent has been dismissed from the Apple and Samsung suits.

### 11. "receiving space"
### '740 Patent, Claims 1-3, 6, 7, and 8 (Google), Claims 6, 7, and 16 (Apple)

| Apple and Google's Proposed Construction | Scramoge's Proposed Construction |
|---|---|
| empty space for the connecting unit extending from one surface of the substrate to an opposing surface of the substrate | Plain and ordinary meaning |

Apple and Google incorporate by reference the arguments in Apple's reply brief on this

term. For the reasons stated therein, the Court should accept Apple and Google's proposed construction.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt Defendants' proposed constructions for each of the disputed claim terms.

DATED:  February 11, 2022

Steven D. Moore (admitted in W.D. Tex.)
Rishi Gupta (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center Suite 1900
San Francisco, CA USA 94111
Tel: (415) 576-0200
Fax: (415) 576-0300
Email: smoore@kilpatricktownsend.com
Email:  rgupta@kilpatricktownsend.com

Alton L. Absher III (admitted in W.D. Tex.)
Andrew W. Rinehart (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Tel: (336) 607-7300
Fax: (336) 607-7500
Email: aabsher@kilpatricktownsend.com
Email:  arinehart@kilpatricktownsend.com

Mansi H. Shah(admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1080 Marsh Road
Menlo Park, CA 94025
Tel: (650)752-2445
Fax: (650) 618-8641
Email:  mansi.shah@kilpatricktownsend.com

Amanda N. Brouillette (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Tel: (404) 685-6775

Respectfully submitted,

*/s/ Alton L. Absher III*
J. Stephen Ravel
Texas State Bar No. 16584975
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

*Attorneys for Apple Inc.*

Fax: (404) 541-3335
Email:  abrouillette@kilpatricktownsend.com

Kasey E. Koballa (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road Suite 1400
Raleigh, NC 27609
Tel: (919) 420-1712
Fax: (202).315-3024
Email:  kkoballa@kilpatricktownsend.com

Christopher P. Schaffer (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
12255 El Camino Real, Suite 250
San Diego, CA 92130
Tel: (858) 350-6161
Fax: (858) 408-3428
Email:  cschaffer@kilpatricktownsend.com

DATED:  February 11, 2022

Respectfully submitted,

By:   /s/ John C. Kappos

Timothy S. Durst (Tex. Bar. No. 786924)
tdurst@omm.com
O'MELVENY & MYERS LLP
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: 972-360-1900
Facsimile: 972-360-1901

Melissa Richard Smith
GILLAM AND SMITH LLP (Tex. Bar
No. 24001351)
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (admitted Pro Hac Vice)
nwhilt@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

John C. Kappos (admitted Pro Hac Vice)
jkappos@omm.com
Cameron W. Westin (admitted Pro Hac Vice)
cwestin@omm.com
Bo Moon (admitted Pro Hac Vice)
bmoon@omm.com
Meng Xu (admitted Pro Hac Vice)
mxu@omm.com
Andrew S. Bledsoe (Cal. Bar No. 332171)
abledsoe@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

*Counsel for Samsung Electronics, Co., Ltd. and
Samsung Electronics America, Inc.*

DATED:  February 11, 2022

Respectfully submitted,

By:    /s/ Shamita Etienne Cummings
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
201 E. Howard St.
Henderson, Texas 75654
(903) 657-8540
(903) 657-6003 (fax)

Bijal V. Vakil (CA Bar No. 192878)
(*admitted to the Western District of Texas*)
Allen & Overy LLP
530 Lytton Ave 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 388-1650
Email: googlescramoge@allenovery.com

Shamita Etienne Cummings (CA Bar No. 202090)
(*admitted to the Western District of Texas*)
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3800
Email: googlescramoge@allenovery.com

*Counsel For Google LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on February 11, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ John C. Kappos*
John C. Kappos
